**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARTON GELLMAN<br>One Whitehall Street<br>15th Floor<br>New York, NY 10004,<br><div align="center">Plaintiff,</div><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY<br>Washington, D.C. 20528<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>OFFICE OF THE DIRECTOR OF NATIONAL<br>INTELLIGENCE<br>Washington, D.C. 20511,<br><br><div align="center">Defendants.</div> | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a, for declaratory, injunctive, and other

appropriate relief.  Plaintiff Barton Gellman ("Plaintiff" or "Mr. Gellman") is a Pulitzer Prize-

winning veteran journalist.  In connection with his reporting, Mr. Gellman has submitted

requests under FOIA and the PA to each of the above-named agencies and components thereof

seeking records concerning himself.  Plaintiff is statutorily entitled to the disclosure of the

records he has requested, and Defendants have improperly withheld them in violation of the law.

Plaintiff, other members of the press, and the public have a powerful interest in timely obtaining

information regarding the nature and extent of the records held by government agencies

concerning journalists like Mr. Gellman.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g).  This

Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g).

## PARTIES

4.      Plaintiff is a reporter who has worked as a journalist and author covering the

federal government and military, diplomatic, intelligence, national security, and legal affairs for

28 years.  He has written regularly for national publications including *The Washington Post*,

where he has been a national correspondent, and *TIME* Magazine.  In addition, Mr. Gellman

holds appointments as Lecturer at the Woodrow Wilson School of Public and International

Affairs and Author in Residence at the Center for International Security Studies at Princeton

University.  Mr. Gellman is currently also a Senior Fellow at The Century Foundation.  His

office is located at One Whitehall Street, 15th Floor, New York, NY 10004.

5.      Defendant United States Department of Homeland Security ("DHS") is an agency

of the federal government within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702 that has

possession, custody, and/or control of records that Plaintiff seeks.  The Office of Intelligence and

Analysis ("OIA") and the Transportation Security Administration ("TSA") are components of

DHS.

6.      Defendant United States Department of Justice ("DOJ") is an agency of the

federal government within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702 that has

possession, custody, and/or control of records that Plaintiff seeks.   The Federal Bureau of Investigation ("FBI") is a component of DOJ.

7.     Defendant Office of the Director of National Intelligence ("ODNI") is an agency of the federal government within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702 that has possession, custody, and/or control of records that Plaintiff seeks.

## FACTS

### Background

8.     Mr. Gellman is an award-winning journalist who has covered the federal government, and national security and legal affairs since 1988.  During the course of his career, Mr. Gellman has met with and interviewed numerous top-level officials in the U.S. government, communicated with public affairs officers at dozens of federal agencies, including Defendants, and written numerous stories about the federal government for national publications.

9.     From 1989 until 2010, Mr. Gellman was a reporter for *The Washington Post*, where he worked as a legal, diplomatic, military, and foreign correspondent.  Mr. Gellman has continued to report for *The Washington Post* since 2010.

10.     In 1999, Mr. Gellman was a finalist for the Pulitzer Prize in the beat reporting category and a finalist for the Goldsmith Investigative Reporting Prize for his work covering the United Nations Special Commission's efforts to disarm Iraq.

11.     In 2002, Mr. Gellman was a member of *The Washington Post* reporting team that won the Pulitzer Prize for national reporting for its coverage of the war on terrorism.

12.     In 2004, Mr. Gellman was a finalist for the Pulitzer Prize in the beat reporting category for his work covering the search for weapons in Iraq.

13.     In 2008, Mr. Gellman shared the Pulitzer Prize in the national reporting category

and the Goldsmith Investigative Reporting Prize with Jo Becker for their series of articles

published in *The Washington Post* on the influence of former Vice President Dick Cheney.  That

series also received the 2007 George Polk Award for political reporting.  Mr. Gellman's book

*Angler: The Cheney Vice Presidency* won the *Los Angeles Times* Book Prize in 2008 and was

selected by *The New York Times* and *The Washington Post* as a best book of 2008.

14.     In 2014, Mr. Gellman was a member of *The Washington Post* reporting team that

won the Pulitzer Prize for public service for its coverage of surveillance by the National Security

Agency.  Mr. Gellman also won the 2013 George Polk Award for national security reporting for

his stories on that same topic.

15.     Mr. Gellman is currently working on a book, to be published by Penguin Press, as

well as news stories for a number of publications, that report on the U.S. government's collection

and use of data and other information relating to journalists like himself.

16.     The government's collection and use of information concerning journalists is a

matter of significant public concern and implicates important constitutional, statutory, and

regulatory protections for newsgathering and reporting.  For example, the Privacy Protection Act

of 1980, 42 U.S.C. § 2000aa, generally prohibits government officers and employees

investigating crimes from searching or seizing work product or documentary materials

"possessed by a person in connection with a purpose to disseminate to the public a newspaper,

book, broadcast, or other similar form of public communication."  Similarly, in recognition of

the detrimental, chilling effect caused by government intrusion into the newsgathering process,

the DOJ has issued guidelines limiting the use of subpoenas and warrants to obtain records of or

belonging to journalists, including records obtained from third-party communications service providers.  *See* 28 C.F.R. § 50.10.

17.     Beginning in January 2015, Mr. Gellman submitted requests pursuant to FOIA and the PA to a number of federal agencies whom he reasonably believed possessed records concerning him, including the agencies named as defendants in this Complaint (hereinafter, collectively, the "FOIA/PA Requests").

18.     Each of the FOIA/PA Requests sought copies of all agency records that mention Mr. Gellman's name.  In order to assist the responding agencies in conducting a search for responsive records, each of the FOIA/PA Requests included additional information about Mr. Gellman and his career as a journalist.

19.     In each of the FOIA/PA Requests, Mr. Gellman asked for expedited processing. Mr. Gellman informed each responding agency, among other things, that the requested records were related to an impending deadline for a *Washington Post* story on "surveillance of investigative journalists," and for a book chapter on the same topic.

20.     Each of the FOIA/PA Requests also included a request for a fee benefit as a representative of the news media as well as a request for a fee waiver.  Mr. Gellman stated in each of the FOIA/PA Requests that the request was being made "in support of a newsgathering operation," and informed each agency that he would be using any information released in a news story.  Mr. Gellman further wrote that "release of this information is in the public interest because it will contribute significantly to public understanding of the operations or activities of the government."

21.     In each of the FOIA/PA Requests, Mr. Gellman certified that the facts stated in his request, including the statements concerning the need for expedited processing, were true and correct to the best of his knowledge and belief.

22.     Mr. Gellman's FOIA/PA Requests for all records that mention his name seek records directly relevant to his reporting on government information-gathering as it relates to investigative journalists.  Since Mr. Gellman is a well-known and well-respected investigative journalist with a decades-long career covering stories related to national security and privacy, government records that mention Mr. Gellman's name would inform his reporting on this important issue.

23.     Mr. Gellman submitted a total of 12 of the FOIA/PA Requests to Defendants that are at issue in this case.

### Plaintiff's FOIA/PA Requests to the Department of Homeland Security

*Plaintiff's FOIA/PA Requests to DHS Headquarters*

24.     On July 6, 2015, Mr. Gellman sent three FOIA/PA requests (collectively, the "DHS HQ Request") via electronic mail to the Office of the General Counsel, Office of Legislative Affairs, and Office of Public Affairs, respectively, at the Department of Homeland Security.  The contents of those requests are described in Paragraphs 17–22 of this Complaint. Mr. Gellman included a copy of Form DOJ-361 for identification purposes in order to facilitate processing of those requests pursuant to the PA.  True and correct copies of the three requests which, collectively, constitute the DHS HQ Request are attached as Exhibit A and are incorporated by reference herein.

25.     The DHS HQ Request complied with all applicable agency regulations regarding submitting FOIA requests.

26.     By letter dated July 15, 2015, Jimmy Wolfrey, a FOIA Program Specialist at DHS, sent a letter acknowledging Mr. Gellman's requests.  Mr. Wolfrey construed the DHS HQ Request as seeking eight broad categories of records, and determined that it was "too broad in scope."

27.     On July 27, 2015, Mr. Gellman, through counsel, sent a letter by electronic mail clarifying his request.  The letter stated: "Pursuant to the FOIA and PA, Mr. Gellman requested that you conduct a search for *all* records that mention his name.  The additional information included in Mr. Gellman's request, which you referred to in your letter as Items 1–8, is background information that Mr. Gellman included in order to assist you in conducting your search and locating responsive records.  These items do not constitute independent record requests."

28.     On August 3, 2015, Mr. Gellman, through counsel, re-sent the July 27 letter via facsimile, as requested by the DHS Privacy Office.

29.     On August 10, 2015, Mr. Gellman, through counsel, re-sent the July 27 letter via electronic mail, as requested by the DHS Privacy Office.

30.     On August 10, 2015, the DHS Privacy Office responded via electronic mail that Mr. Gellman's clarification of his request "does not narrow the search area and can delay the response time."

31.     On August 12, 2015, counsel for Mr. Gellman spoke with Mr. Wolfrey by telephone regarding Mr. Gellman's requests.  Mr. Wolfrey requested that Mr. Gellman designate certain systems of records for DHS to search in response to the DHS HQ Request.

32.     In response to Mr. Wolfrey's request, on August 26, 2015, Mr. Gellman, through

counsel, submitted a letter designating eight systems of records for DHS to search.[1]  In the letter,

Mr. Gellman requested that DHS search the following systems of records, all of which appear on

the DHS Privacy Act website listing the DHS systems of records: MSPB/GOVT-1,

OPM/GOVT-2, OPM/GOVT-3, DHS/ALL-001, DHS/ALL-002, DHS/ALL-005, DHS/ALL-

016, and DHS/ALL-029.

33.     Thereafter, in a letter dated September 16, 2016 sent directly to Mr. Gellman via

email, Mr. Wolfrey stated: "After discussing your FOIA/PA request with your Counsel via

phone on August 12, 2015, we received an email, dated August 26, 2015, that contained

additional information."

34.     Mr. Wolfrey's September 16, 2015 letter further stated that Mr. Gellman would

need to submit his request to separate FOIA offices within other agencies with respect to the

MSPB/GOVT-1, OPM/GOVT-2 and OPM/GOVT-3 systems of records.

35.     With respect to DHS/ALL-001 and DHS/ALL-0016, the September 16, 2015

letter stated that DHS was "unable to locate or identify any responsive records."

36.     With respect to DHS/ALL-005, the September 16, 2015 letter stated that the

request had already been "referred to TSA for processing and direct response to you" and

therefore that DHS would take no further action.

37.     With respect to DHS/ALL-002 and DHS/ALL-017, the September 16, 2015 letter

stated that "we have queried the appropriate component(s) of DHS for responsive records."

38.     With respect to DHS/ALL-029, the September 16, 2015 letter stated that "if such

records exist, they may be under the purview of Civil Rights and Civil Liberties (CRCL), a DHS

---

[1] A complete list of the DHS Systems of Records can be found at Department of Homeland Security Systems of
Records Notices, http://www.dhs.gov/system-records-notices-sorns.

component." As a result, Mr. Wolfrey referred the DHS HQ Request to CRCL for further
action.

39.     On September 22, Mr. Gellman, through counsel, via U.S. Mail, submitted an
administrative appeal regarding the failure of DHS to conduct an adequate search as to
DHS/ALL-001 and DHS/ALL-016 as well as the failure of DHS to make a timely determination
as to searches of DHS/ALL-002, DHS/ALL-005, DHS/ALL-017, and DHS/ALL-029.  The
administrative appeal further stated that DHS had failed to make a timely determination as to Mr.
Gellman's request for expedited processing and reiterated his request for a fee waiver.

40.     On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for
assistance regarding the DHS HQ Request and appeal.  Mr. Gellman's request for OGIS
assistance was assigned Case No. 201600099.

41.     By letter dated December 22, 2015, the United States Coast Guard Office of the
Chief Administrative Law Judge ("ALJ") responded to Mr. Gellman's appeal.  The ALJ upheld
the adequacy of DHS's search of DHS/ALL-001 and DHS/ALL-016.  The ALJ directed the
Privacy Office to consider whether Mr. Gellman's request is entitled to expedited processing
and/or a fee waiver.

42.     On February 26, 2016, OGIS closed Case No. 201600099.

43.     As of the date of this Complaint, it has been 187 business days since the DHS HQ
Request was submitted.  No responsive records have been produced by DHS.

*Plaintiff's FOIA/PA Requests to the Office of Intelligence and Analysis*

44.     On January 15, 2015, Mr. Gellman sent a FOIA/PA request (the "First OIA
Request") via U.S. Mail to the Office of Intelligence & Analysis ("OIA").  The contents of the
First OIA Request, which was dated January 14, 2015, are described in Paragraphs 17–22 of this

Complaint.  Mr. Gellman included a copy of Form DOJ-361 for identification purposes in order to facilitate processing of his request pursuant to the PA.

45.     By electronic mail dated January 30, 2015, Priscilla Waters, FOIA Officer at OIA, acknowledged Mr. Gellman's request and notified Mr. Gellman that his requests for expedited processing and for a fee waiver had been granted.

46.     By electronic mail dated February 6, 2015, Ms. Waters notified Mr. Gellman that OIA was "unable to locate or identify any responsive records" in response to the First OIA Request.

47.     On July 6, 2015, Mr. Gellman sent a FOIA/PA request (the "Second OIA Request") via electronic mail to the OIA.  The Second OIA Request was substantially the same as the First OIA Request.  A true and correct copy of the Second OIA Request is attached as Exhibit B and is incorporated by reference herein.

48.     By electronic mail dated July 23, 2015, Ms. Waters acknowledged Mr. Gellman's request and notified Mr. Gellman that his request for expedited processing had been denied because he "failed to demonstrate a particular urgency to inform the public about the government activity involved in the request."  The acknowledgment letter appeared to misunderstand the request, and construed Mr. Gellman's request as a request for eight separate categories of records.

49.     The acknowledgment letter did not make a determination as to Mr. Gellman's request for news media requestor fee status or for a fee waiver.

50.     On July 27, 2015, Mr. Gellman submitted, through counsel, via electronic mail, a letter clarifying that the "additional information included in Mr. Gellman's request, which [Ms.

Waters] referred to in [her] letter as Questions 1–8, is background information . . . . These items do not constitute independent record requests."

51.     By electronic mail dated July 28, 2015, Ms. Waters issued a final response to the Second OIA Request. Ms. Waters stated that, to the extent records responsive to the Second OIA Request exist, such records are "totally exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. §§ 552a(k)(2) in conjunction with 6 C.F.R. Part 5, App. C." Ms. Waters further wrote that "the fact of the existence or nonexistence of records pertaining to your request would be exempted from disclosure pursuant to 50 U.S.C. § 3024(i) and 6 U.S.C. § 121(d)(11)."

52.     On August 18, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an administrative appeal regarding the failure of OIA to conduct an adequate search and to properly segregate and produce non-exempt material in response to the Second OIA Request. Mr. Gellman appeal stated that OIA's "claim that it possesses only records that are exempt from disclosure is all the more troubling because just months ago, in response to an earlier request by Mr. Gellman for records that pertain to him, [OIA] claimed that it was 'unable to locate or identify any responsive records.'"

53.     On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for assistance regarding the Second OIA Request and appeal. Mr. Gellman's request for OGIS assistance was combined with his request for OGIS assistance regarding his DHS HQ Request and appeal, and was assigned Case No. 201600099.

54.     On February 26, 2016, OGIS informed counsel for Mr. Gellman that the Privacy Office had sent Mr. Gellman's appeal to the U.S. Coast Guard's Administrative Law Judge

(ALJ) on December 4, 2015, and had not received a decision regarding that appeal, and closed

Case No. 201600099.

55.     By letter dated March 16, 2016, the ALJ responded to Mr. Gellman's appeal.  The

ALJ upheld OIA's response.

56.     As of the date of this Complaint, it has been 187 business days since the Second

OIA Request was submitted.  No responsive records have been produced by OIA.

*Plaintiff's FOIA/PA Request to the Transportation Security Administration*

57.     On January 15, 2015, Mr. Gellman sent a FOIA/PA request (the "TSA Request")

to the Transportation Security Administration ("TSA") via U.S. mail. The contents of the TSA

Request are described in Paragraphs 17–22 of this Complaint.  Mr. Gellman included a copy of

Form DOJ-361 for identification purposes in order to facilitate processing of his request pursuant

to the PA.  A true and correct copy of the TSA Request is attached as Exhibit C and is

incorporated by reference herein.

58.     The TSA Request complied with all applicable agency regulations regarding

submitting FOIA requests.

59.     Mr. Gellman did not receive any correspondence acknowledging receipt of the

TSA Request.

60.     On June 24, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an

administrative appeal regarding the TSA Request.  The appeal stated that the TSA had failed to

make a determination regarding Mr. Gellman's request within the statutory time limit.

61.     On September 15, 2015, Kimberly Walton, Assistant Administrator for Civil

Rights and Liberties, Ombudsman and Traveler Engagement, responded to Mr. Gellman's

appeal.  The response stated: "As the FOIA Office has not taken any final action on your request

there is no administratively appealable action for review at this time." The response further

stated that TSA anticipated making a release determination within 45 days.

62.     On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for

assistance regarding this request and appeal. Mr. Gellman's request for OGIS assistance was

assigned Case No. 201600107.

63.     On December 7, 2015, Regina McCoy, FOIA Officer, responded to Mr.

Gellman's request. Ms. McCoy's letter enclosed ten pages of responsive documents. Ms.

McCoy did not inform Mr. Gellman regarding whether or how many documents were withheld

in full pursuant to any claimed exemptions.

64.     On December 15, 2015, OGIS informed counsel for Mr. Gellman that the TSA

expected to respond to Mr. Gellman's request shortly, and closed Case No. 201600107.

65.     On January 5, 2016, Mr. Gellman submitted, through counsel, via U.S. Mail, an

administrative appeal (the "Second TSA Appeal") regarding the failure of TSA to conduct an

adequate search and to properly segregate and produce non-exempt material. Mr. Gellman

reiterated his request that TSA inform him of its legal basis for withholding any records, and

noted that TSA did not disclose whether it was withholding any records in full pursuant to any

claimed exemption.

66.     Mr. Gellman also appealed from the TSA's finding that parts of the records it

produced are properly exempt pursuant to Exemption 3. Mr. Gellman challenged TSA's

assertion that certain parts of the records that pertain to Mr. Gellman are exempt because

disclosure of information that would "be detrimental to the security of transportation" is

prohibited. 49 U.S.C. § 114(r).

67.     As of the date of this Complaint, no further communication has been received by Mr. Gellman regarding either the TSA Request or his administrative appeal.

68.     As of the date of this Complaint, it has been 304 business days since the TSA Request was submitted, and 61 business days since the Second TSA Appeal was submitted.  No responsive records have been produced by TSA.

### Plaintiff's FOIA/PA Requests to the Department of Justice

*Plaintiff's FOIA/PA Requests to the Federal Bureau of Investigation*

69.     On January 15, 2015, Mr. Gellman sent a FOIA/PA request, (the "First FBI Request") to the Federal Bureau of Investigation ("FBI") via U.S. Mail.  The contents of the First FBI Request, which was dated January 14, 2015, are described in Paragraphs 17–22 of this Complaint.  Mr. Gellman included a copy of Form DOJ-361 for identification purposes in order to facilitate processing of his request pursuant to the PA.  A true and correct copy of the First FBI Request is attached as Exhibit D and is incorporated by reference herein.

70.     The First FBI Request complied with all applicable agency regulations regarding submitting FOIA requests.

71.     By letter dated January 27, 2015, David M. Hardy, Section Chief of the Record/Information Dissemination Section of the Records Management Division of the FBI, confirmed receipt of the First FBI Request by mail and informed Mr. Gellman that his request for a fee waiver was being considered.

72.     By letter dated January 27, 2015, Mr. Hardy sent, via U.S. Mail, a letter denying Mr. Gellman's request for expedited processing.  The January 27 letter stated that Mr. Gellman had not "provided enough information proving 'an urgency to inform the public about an actual or alleged federal government activity . . . .'"

73.     The FBI did not make a determination as to Mr. Gellman's request for news media requestor fee status or for a fee waiver.

74.     On February 12, 2015, Mr. Gellman appealed the denial of expedited processing to the Director of the Office of Information Policy ("OIP") at the DOJ.

75.     By email dated March 16, 2015, Sean R. O'Neill, Chief of the Administrative Appeals Staff at the OIP, denied Mr. Gellman's appeal of the denial of expedited processing of his request.

76.     On June 24, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an administrative appeal (the "First FBI Appeal") to the OIP regarding the First FBI Request.  The appeal stated that the FBI had failed to make a determination regarding Mr. Gellman's request within the statutory time limit.

77.     On July 13, 2015, Mr. O'Neill responded to Mr. Gellman's administrative appeal. The response stated: "Department of Justice regulations provide for an administrative appeal . . . only after there has been an adverse determination by a component."  The letter further stated that the FBI's failure to respond to Mr. Gellman's request did not constitute an adverse determination and that OIP therefore could not consider the appeal.

78.     On July 6, 2015, Mr. Gellman sent a second FOIA/PA request (the "Second FBI Request") to the FBI via electronic mail.  The contents of the Second FBI Request are described in Paragraphs 17–22 of this Complaint.  Mr. Gellman specified that the FBI should search the Central Records System, ELSUR, Bureau mailing lists, and N-DEx.  A true and correct copy of the Second FBI Request is attached as Exhibit E and is incorporated by reference herein.

79.     On August 18, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an administrative appeal (the "Second FBI Appeal") to the OIP regarding the Second FBI Request.

The appeal stated that the FBI had failed to make a determination regarding Mr. Gellman's request within the statutory time limit.

80.     On September 15, 2015, Mr. O'Neill responded to the Second Administrative Appeal.  The response stated: "Department of Justice regulations provide for an administrative appeal . . . only after there has been an adverse determination by a component."  The letter further stated that the FBI's failure to respond to Mr. Gellman's request did not constitute an adverse determination and that OIP therefore could not consider the Second Administrative Appeal.  The OIP informed Mr. Gellman's counsel that the Second FBI Request "is being considered supplemental" to the First FBI Request.

81.     On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for assistance regarding his requests and appeals.  Mr. Gellman's request for OGIS assistance was assigned Case No. 201600103.

82.     On November 16, 2015, OGIS informed counsel for Mr. Gellman that his requests had been placed in the FBI's "medium" queue and that the FBI estimated that it would complete processing the requests within six months.  OGIS closed Case No. 201600103.

83.     As of the date of this Complaint, it has been 304 business days since the First FBI Request was submitted.  It has been 187 business days since the Second FBI Request was submitted.  No responsive records have been produced by the FBI.

*Plaintiff's FOIA/PA Request to the Criminal Division*

84.      On March 16, 2015, Mr. Gellman sent a FOIA/PA request (the "CRM Request") to the Criminal Division via electronic mail. The contents of the CRM Request are described in Paragraphs 17–22 of this Complaint.  Mr. Gellman included a copy of Form DOJ-361 for identification purposes in order to facilitate processing of his request pursuant to the PA.  A true

and correct copy of the CRM Request is attached as Exhibit F and is incorporated by reference herein.

85.     The CRM Request complied with all applicable agency regulations regarding submitting FOIA requests.

86.     By letter dated April 22, 2015, Kenneth Courter, Chief of the FOIA/PA Unit at the Criminal Division, confirmed receipt of Mr. Gellman's FOIA/PA request.  Mr. Courter wrote that Mr. Gellman's request presented "unusual circumstances" that required the Criminal Division to conduct a search in other offices and therefore to extend the time for the search "beyond the ten additional days provided by the statute."  In that acknowledgment letter, the Criminal Division also granted Mr. Gellman's request for expedited processing.

87.     The acknowledgment letter did not make a determination as to Mr. Gellman's request for news media requestor fee status or for a fee waiver.

88.     On May 28, 2015, the Criminal Division informed Mr. Gellman, via electronic mail, that it had identified one record responsive to the CRM Request and had referred that record to the OIP.

89.     On June 11, 2015, OIP informed Mr. Gellman that it was "consulting" with the Offices of the Attorney General and Public Affairs regarding the disclosure of the one record that the Criminal Division had referred to OIP.

90.     On June 24, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an administrative appeal to the OIP regarding the CRM Request (the "First CRM Appeal").  The appeal stated that the Criminal Division had failed to conduct an adequate search and had failed to make a determination regarding Mr. Gellman's request within the statutory time limit.

91.     On July 10, 2015, Mr. O'Neill responded to Mr. Gellman's appeal.  Mr. O'Neill determined that the OIP's referral was proper and the Criminal Division's search was adequate and reasonable.

92.     On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for assistance regarding this request and appeal.  Mr. Gellman's request for OGIS assistance was combined with his other requests to the DOJ and was assigned Case No. 201600101.

93.     On January 7, 2016, Vanessa R. Brinkmann, Senior Counsel at OIP, responded to Mr. Gellman's CRM request as well as his OPA Request, as alleged in Paragraph 105 below.  Concerning the CRM Request, Ms. Brinkmann noted that OIP had determined that the Criminal Division had conducted an adequate search.  Ms. Brinkmann also noted that OIP had finished its review of twelve pages of material referred to it by the Criminal Division, and that OIP had determined that the twelve pages must be withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).

94.     On January 19, 2016, OGIS closed Case No. 201600101.

95.     On March 7, 2016, Mr. Gellman, submitted, through counsel, via the OIP's FOIAonline portal, an administrative appeal to the OIP regarding the CRM Request as well as the OPA Request (the "Second CRM Appeal").  Concerning the CRM Request, Mr. Gellman appealed the OIP's determination that the responsive records are entirely exempt from disclosure under Exemption 5 because they are protected by the deliberative process privilege.

96.     As of the date of this Complaint, it has been 264 business days since the CRM Request was submitted.  No responsive records have been produced by the Criminal Division.

*Plaintiff's FOIA/PA Request to the Office of Public Affairs*

97.     On March 16, 2015, Mr. Gellman sent a FOIA/PA request (the "OPA Request")

to the Office of Public Affairs via electronic mail.  The contents of the OPA Request are

described in Paragraphs 17–22 of this Complaint.  Mr. Gellman included a copy of Form DOJ-

361 for identification purposes in order to facilitate processing of his request pursuant to the PA.

A true and correct copy of the OPA Request is attached as Exhibit G and is incorporated by

reference herein.

98.     The OPA Request complied with all applicable agency regulations regarding

submitting FOIA requests.

99.     On March 26, 2015, Vanessa R. Brinkmann, Senior Counsel at OIP, confirmed

receipt of Mr. Gellman's FOIA/PA request by email.  Ms. Brinkmann wrote that Mr. Gellman's

request presented "unusual circumstances" that required OPA to conduct a search in another

office and therefore to extend the time for the search.  In that acknowledgment letter, OPA also

granted Mr. Gellman's request for expedited processing.

100.     The acknowledgment letter did not make a determination as to Mr. Gellman's

request for news media fee requestor status or for a fee waiver.

101.     On June 24, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an

administrative appeal to the OIP regarding the OPA Request.  The appeal stated that the OPA

had failed to make a determination regarding Mr. Gellman's request within the statutory time

limit.

102.     On July 13, 2015, OIP responded to the administrative appeal.  The response

stated: "Department of Justice regulations provide for an administrative appeal . . . only after

there has been an adverse determination by a component."  The letter further stated that the

OPA's failure to respond to Mr. Gellman's request did not constitute an adverse determination and that OIP therefore could not consider the administrative appeal.

103.    On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for assistance regarding this request and appeal.  Mr. Gellman's request for OGIS assistance was combined with his other requests to the DOJ and was assigned Case No. 201600101.

104.    On December 2, 2015, Mr. Gellman and Douglas Hibbard of OIP communicated via electronic mail regarding his request.  Mr. Gellman agreed that his request may be bifurcated, with substantive records concerning Mr. Gellman ("Category 1" records) provided within one month, and records consisting of news articles by Mr. Gellman ("Category 2" records) provided within three months.

105.    On January 7, 2016, Vanessa R. Brinkmann, Senior Counsel at OIP, responded to Mr. Gellman's OPA Request as well as the CRM Request.  Concerning the OPA Request, Ms. Brinkmann noted that OIP had located five records, totaling 100 pages, responsive to Mr. Gellman's request for Category 1 records.  Ms. Brinkmann also noted that OIP had determined that all responsive documents should be withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).  Finally, Ms. Brinkmann informed Mr. Gellman that OIP was continuing to process the remainder of the Category 1 records, which numbered ten documents totaling twenty-nine pages.

106.    On January 19, 2016, OGIS closed Case No. 201600101.

107.    On March 7, 2016, Mr. Gellman, submitted, through counsel, via the OIP's FOIAonline portal, an administrative appeal to the OIP regarding the OPA Request as well as the CRM Request.  Concerning the OPA Request, Mr. Gellman appealed the adequacy of OIP's

search, as well as its determination that the responsive records are entirely exempt from disclosure because they are protected by the deliberative process privilege.

108.     As of the date of this Complaint, it has been 264 business days since the OPA Request was submitted.  No responsive records have been produced by the Office of Public Affairs.

*Plaintiff's FOIA/PA Request to the National Security Division*

109.     On January 15, 2015, Mr. Gellman sent a FOIA/PA request (the "NSD Request") to the National Security Division via electronic mail.  The contents of the NSD Request are described in Paragraphs 17–22 of this Complaint.  Mr. Gellman included a copy of Form DOJ-361 for identification purposes in order to facilitate processing of his request pursuant to the PA.

110.     The NSD Request complied with all applicable agency regulations regarding submitting FOIA requests.

111.     On February 12, 2015, Mr. Gellman resubmitted the above-referenced request to the NSD.  A true and correct copy of the NSD Request is attached as Exhibit H and is incorporated by reference herein.

112.     On February 25, 2015, Arnetta Mallory, Section Chief of the Record/Information Dissemination Section of the Records Management Division of the NSD, informed Sam Adler-Bell, Mr. Gellman's research assistant, that the NSD would not process Mr. Gellman's February 12, 2015 request because it was a duplicate of his January 15, 2015 request.

113.     On March 9, 2015, Ms. Mallory confirmed receipt of the NSD Request by U.S. Mail.  In that letter, Ms. Mallory denied Mr. Gellman's request for expedited processing and his request for a fee waiver.

114.     On June 24, 2015, Mr. Gellman submitted, through counsel, via U.S. Mail, an administrative appeal to the OIP regarding the NSD Request.  The appeal stated that the National Security Division had failed to make a determination regarding Mr. Gellman's request within the statutory time limit.  Mr. Gellman also reiterated his request for a fee benefit as a member of the news media.

115.     On September 9, 2015, OIP responded to the administrative appeal.  The response stated: "Department of Justice regulations provide for an administrative appeal . . . only after there has been an adverse determination by a component."  The letter further stated that the National Security Division's failure to respond to Mr. Gellman's request did not constitute an adverse determination and that OIP therefore could not consider the administrative appeal.  With respect to Mr. Gellman's appeal of his fee status, OIP stated: "If in the future NSD assesses fees in connection with the processing of your request, you may renew your request to be classified as a representative of the news media for fee purposes."

116.     On October 19, 2015, Mr. Gellman, through counsel, approached OGIS for assistance regarding this request and appeal.  Mr. Gellman's request for OGIS assistance was combined with his other requests to the DOJ and was assigned Case No. 201600101.

117.     On December 3, 2015, Ms. Mallory informed Mr. Gellman, via electronic mail, that the NSD had granted Mr. Gellman's request for expedited processing and a fee waiver on March 25, 2015.

118.     On January 19, 2016, OGIS informed Mr. Gellman that the NSD was coordinating with another office in a search for responsive documents and was unable to provide an estimated date of completion for Mr. Gellman's request.  OGIS closed Case No. 201600101.

119.     As of the date of this Complaint, it has been 304 business days since the NSD

Request was submitted.  No responsive records have been produced by the National Security

Division.

**Plaintiff's FOIA/PA Request to the Office of the Director of National Intelligence**

120.     On January 15, 2015, Mr. Gellman sent a FOIA/PA request (the "ODNI

Request") to the Office of the Director of National Intelligence ("ODNI") via U.S. Mail.  The

contents of the ODNI Request, which was dated January 14, 2015, are described in Paragraphs

17–22 of this Complaint.  Mr. Gellman included a copy of Form DOJ-361 for identification

purposes in order to facilitate processing of his request pursuant to the PA.  A true and correct

copy of the ODNI Request is attached as Exhibit I and is incorporated by reference herein.

121.     The ODNI Request complied with all applicable agency regulations regarding

submitting FOIA requests.

122.     By letter dated February 5, 2015, Jennifer Hudson, Director of the Information

Management Division of ODNI, confirmed receipt of the ODNI Request by U.S. Mail.  In that

letter, Ms. Hudson denied Mr. Gellman's request for expedited processing.   Ms. Hudson also

noted that ODNI "may be unable to provide a response" within FOIA's statutory deadline.

123.     On February 12, 2015, Mr. Gellman submitted, via U.S. Mail, an administrative

appeal to the ODNI (the "ODNI Appeal") regarding the denial of expedited processing for the

ODNI Request.

124.     Mr. Gellman has received no correspondence or communications from ODNI

regarding the ODNI Appeal.

125.     On January 14, 2016, Sally Nicholson, an ODNI employee, and Mr. Gellman

spoke by phone regarding the ODNI Request.

126.    By letter dated January 28, 2016, Ms. Hudson provided Mr. Gellman with an interim response to his request under the Privacy Act.  Ms. Hudson informed Mr. Gellman that ODNI had searched its Security, Personnel, and Human Resources files and located no records responsive to his request.

127.    Ms. Hudson further stated that ODNI denied Mr. Gellman's request for "classified intelligence files."  Ms. Hudson stated that the "fact of the existence or nonexistence of requested records is currently and properly classified," and neither confirmed nor denied that such records may or may not exist.

128.    Ms. Hudson further stated that ODNI had begun its search and review of the following categories of information: (1) All documents or emails that contain reactions to, or conversations about, Mr. Gellman and/or Mr. Gellman's articles; (2) emails that concern planning/guidance instructions regarding Mr. Gellman's reporting; (3) Damage Assessments made due to Mr. Gellman's reporting; (4) policy changes made due to Mr. Gellman's reporting.

129.    Ms. Hudson notified Mr. Gellman that he would be provided appeal rights when ODNI sent its final response to him.

130.    On March 21, 2016, Mr. Gellman received 560 pages of records from the United States Air Force in response to a separate FOIA request not at issue in this case.  The records Mr. Gellman received indicate that ODNI possesses records responsive to the ODNI Request.

131.    As of the date of this Complaint, it has been 304 business days since the ODNI Request was submitted.  No responsive records have been produced by ODNI.

## CAUSES OF ACTION

### Count I

### (All Defendants)

### Violation of FOIA for Failure to Comply with Statutory Deadlines

132.    Mr. Gellman repeats and re-alleges the foregoing paragraphs.

133.    Defendants are agencies subject to FOIA.

134.    Mr. Gellman properly asked for records within the custody and control of Defendants.

135.    Defendants have failed to process the Requests as soon as practicable.  5 U.S.C. § 552(a)(6)(E)(iii).

136.    Defendants failed to make a determination with respect to all Requests within the 20 working day deadline required by FOIA.  5 U.S.C. § 556(a)(6)(A).

137.    Defendant DHS failed to make an adequate determination with respect to the TSA Request by failing to inform Mr. Gellman of the scope of the documents that the TSA withheld under any FOIA exemptions.

138.    Mr. Gellman has exhausted and/or is deemed to have exhausted the applicable administrative remedies with respect to his requests and administrative appeals.  5 U.S.C. § 552(a)(6)(C)(i).

### Count II

### (All Defendants)

### Violation of FOIA for Wrongful Withholding of Agency Records

139.    Mr. Gellman repeats and re-alleges the foregoing paragraphs.

140.    Mr. Gellman properly asked for records within the custody and control of Defendants.

141.    Defendants have failed to make responsive records available to Mr. Gellman, in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

142.    Mr. Gellman has exhausted and/or is deemed to have exhausted the applicable administrative remedies with respect to his requests.  5 U.S.C. § 552(a)(6)(C)(i).

<div align="center">

**Count III**

**(All Defendants)**

**Violation of FOIA for Failure to Conduct a Reasonable Search**

</div>

143.    Mr. Gellman repeats and re-alleges the foregoing paragraphs.

144.    Mr. Gellman properly asked for records within the custody and control of Defendants.

145.    Defendant DHS failed to conduct a proper search in responding to the OIA Request by failing to identify any records that are not exempt from disclosure.

146.    Defendant DHS failed to conduct a proper search in responding to the TSA Request by failing to conduct a search reasonably calculated to uncover all relevant documents.

147.    Defendant DOJ failed to conduct a proper search in responding to the CRM Request by failing to identify any records that are not exempt from disclosure.

148.    Defendant DOJ failed to conduct a proper search in responding to the OPA Request by failing to identify any records that are not exempt from disclosure.

149.    Defendant ODNI failed to conduct a proper search in responding to the ODNI Request by failing to identify any records that are not exempt from disclosure.

150.   Defendants' failure to conduct a proper search in response to the above-referenced requests violates their respective obligations under FOIA.  5 U.S.C. § 552(a)(3).

151.   Mr. Gellman has exhausted and/or is deemed to have exhausted the applicable administrative remedies with respect to his requests.  5 U.S.C. § 552(a)(6)(C)(i).

## Count IV

## (Defendants DHS and DOJ)

### Violation of FOIA for Failure to Segregate and Produce Non-Exempt Material

152.   Mr. Gellman repeats and re-alleges the foregoing paragraphs.

153.   Mr. Gellman properly asked for records within the custody and control of Defendant.

154.   Defendant DHS failed to segregate and produce non-exempt material in response to the OIA Request.

155.   Defendant DHS failed to segregate and produce non-exempt material in response to the TSA Request.

156.   Defendant DOJ failed to segregate and produce non-exempt material in response to the CRM Request.

157.   Defendant DOJ failed to segregate and produce non-exempt material in response to the OPA Request.

158.   Defendants' failure to segregate and produce non-exempt material in response to the above-referenced requests violates their obligations under FOIA.  5 U.S.C. § 552(b).

159.   Mr. Gellman has exhausted and/or is deemed to have exhausted the applicable administrative remedies with respect to his requests.  5 U.S.C. § 552(a)(6)(C)(i).

## Count V

**(All Defendants)**

**Violation of FOIA for Failure to Grant News Media Fee Status**

160.    Mr. Gellman repeats and re-alleges the foregoing paragraphs.

161.    In his Requests, Mr. Gellman set forth facts supporting a determination that he was entitled to news media fee status.

162.    Defendants failed to make a determination with regard to Mr. Gellman's news media fee status, in violation of FOIA.  5 U.S.C. § 552(a)(4).

163.    Mr. Gellman has exhausted and/or is deemed to have exhausted the applicable administrative remedies with respect to his fee status determination.  5 U.S.C. § 552(a)(6)(C)(i).

## Count VI

**(All Defendants)**

**Violation of FOIA for Failure to Grant Fee Waiver**

164.    Mr. Gellman repeats and re-alleges the foregoing paragraphs.

165.    In his Requests, Mr. Gellman set forth facts supporting a determination that he was entitled to fee waivers.

166.    The above-referenced Defendants failed to make a determination with regard to Mr. Gellman's news media fee status, in violation of FOIA.  5 U.S.C. § 552(a)(4).

167.    Mr. Gellman has exhausted and/or is deemed to have exhausted the applicable administrative remedies with respect to his fee status determination.  5 U.S.C. § 552(a)(6)(C)(i).

## Count VII

## (All Defendants)

### Violation of the Privacy Act for Failure to Comply with an Individual Request

168.     Mr. Gellman repeats and re-alleges the foregoing paragraphs.

169.     Mr. Gellman properly requested access to information pertaining to him contained in records maintained by Defendants.

170.     Defendants failed to permit Mr. Gellman to review the requested record(s) or to have a copy made.  5 U.S.C. § 552a(d)(1).

171.     Defendants failed to comply with Mr. Gellman's request, in violation of their obligations under the Privacy Act.  5 U.S.C. § 552(g)(1)(B).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

(1) order Defendants and their components to conduct a search for all records responsive to Mr. Gellman's FOIA/PA Requests, and to immediately disclose all non-exempt records responsive to Mr. Gellman's FOIA/PA Requests in their entirety;

(2) issue a declaration that Mr. Gellman is entitled to disclosure of the requested records;

(3) issue a declaration that Mr. Gellman is entitled to news media requestor fee status;

(4) issue a declaration that Mr. Gellman is entitled to a fee waiver with respect to each of the FOIA/PA Requests;

(5) issue a declaration that Defendants and their personnel have acted arbitrarily and/or capriciously with respect to withholding records responsive to Mr. Gellman's FOIA/PA Requests pursuant to 5 U.S.C. § 552(a)(4)(F)(i);

(6) award Mr. Gellman reasonable attorney's fees and costs pursuant to 5 U.S.C. §

552(a)(4)(E) and 5 U.S.C. § 552a(G)(3)(B); and

(7) grant such other relief as the Court may deem just and proper.

Dated: April 4, 2016

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
DC Bar No. 1026115
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

*Counsel of record for Plaintiff Barton Gellman*

Bruce D. Brown
DC Bar No. 457317
bbrown@rcfp.org
Adam A. Marshall
DC Bar No. 1029423
amarshall@rcfp.org
Hannah Bloch-Wehba*
hbw@rcfp.org
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1250
Washington, D.C. 20005
Phone: (202) 795-9300
Facsimile: (202) 795-9310

*Of counsel for Plaintiff Barton Gellman*

*Application to practice in the District of
Columbia pending; practicing under the
supervision of Plaintiff's counsel of record