# EXHIBIT A

July 6, 2015

Office of Legislative Affairs
U.S. Department of Homeland Security
Washington, D.C. 20528

Dear FOIA officer -

Under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a, please furnish me with copies of all records that mention my name, Barton Gellman (aka Bart Gellman), held by the Department of Homeland Security, Office of Legislative Affairs

**Responsive records may pertain to:**

- information relating to my travels, domestic and international, since 1980, including ticket and flight information, Passenger Name Records, records pertaining to inspections or secondary inspections (whether or not secondary inspections were actually conducted), IE Entry/Exit Records, I94 records, HR records, ITRAC, other data collected and/or stored by ATS;

- data in any form, electronic or otherwise, shared with the US government by airlines, travel agencies, financial, lodging or other non-government travel service providers (including IP addresses, user agents and browser data logged by service provider web sites);

- records indicating that any of the aforementioned information has been disseminated or shared in any form with other federal, state, local, tribal or foreign personnel, organizations or agencies; and if so, what was shared and when;

- my interaction with Edward Snowden since 2013 and my role in reporting on electronic surveillance and other intelligence operations, policies, targets, sources and methods during that period;

- any mention of me, whether as a potential subject, target, witness or in any other role, in connection with a leak investigation or any other investigation, including but not limited to criminal, counterintelligence and counterterrorism investigations;

- my work as a journalist and author covering the federal government, military, diplomatic, intelligence, national security and legal affairs from 1983 to present;

- informational and comments by and about me in connection with security screenings of other people (for positions of trust or access to secure facilities or classified information) and in connection with the security screenings required to clear me for access to restricted areas, including but not limited to the Pentagon

and other U.S. and allied defense facilities and proximity to senior civilian and uniformed officials.

- my contacts with foreign nationals, governmental and nongovernmental, while in the United States and overseas;

**Date Range**: 1980 – present

To help identify information about me in your record systems, I am providing the following required information:

*Full Name:* Barton David Gellman
*Current Address:* 910 West End Ave. Apt 12A, New York, NY 10025
*Birthdate:* November 3, 1960
*Place of Birth:* Philadelphia, PA
*Citizenship Status:* USA

Please also see attached a copy of DOJ-361, provided for identification purposes.

**Please provide the records as they become available, and, where possible, via electronic means such as fax or email attachments.**

**Fees:** As a "representative of the news media," I am only required to pay for the direct cost of duplication after the first 100 pages. (6 CFR. 5.11 (d)(3)) Through this request, I am gathering information that will reveal how the government interprets its authority to collect and retain information on journalists like myself. This is of current interest to the public because of the ongoing debate—in the courts, the media, and Congress—over government surveillance, and because of widespread concern that journalists and their sources are being subject to surveillance. This information is being sought on behalf of *The Washington Post* and myself for dissemination to the general public.

Please waive any applicable fees. Release of the information is in the public interest because it will contribute significantly to public understanding of government operations and activities. The information sought will inform my ongoing reporting, as well as an upcoming book, on privacy, security and surveillance in the digital age. The release of this information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government," (6 CFR. 5.11 (k)(1)(i)), namely, the government's surveillance of and retention of information about journalists, like myself, who report on national security issues.

If my fee waiver is denied, I am willing to pay up to $50 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.

**Expedited Processing:** I am requesting expedited processing for this request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 CFR. 5.5(d)(1)(ii). My job as a national correspondent for *The Washington Post* qualifies me as "a person primarily engaged in disseminating information." Moreover, the information requested pertains to an "actual or alleged federal government activity" of urgent public concern. I have a "compelling need" for the records sought for the following reasons:

1) The public, as well as Congress and the courts, continue to debate whether and how to narrow the scope of the government's authority to collect data on its citizens.[1] The documents sought will help inform that debate, by allowing me to report on how the government interprets its authority to collect and retain information on journalists like myself. A few weeks ago, Congress voted in favor of the USA Freedom Act—in some part, thanks to my own reporting[2] on the intelligence documents leaked to me by Edward Snowden—which curtails the NSA's ability to collect Americans' phone records in bulk.[3] Many privacy advocates agree, however, that bulk collection under section 215 of the Patriot Act is by no means the most invasive or concerning surveillance power revealed over the past year.[4] In the coming months, Congress will consider whether to further rein in the government's surveillance activities—including the warrantless search of American communications via Sec. 702 of the FISA Amendments Act.[5] In the courts, the Second Circuit Court of Appeals ruled that bulk metadata collection is not legal under Patriot Act sec 215.[6] Other appeals courts have also heard arguments about the legality of surveillance programs. A split among the opinions of these courts could prompt a

---

[1] "A Year After Reform Push, NSA Still Collects Bulk Domestic Data, Still Lacks Way to Assess Value," by Dan Froomkin. *The Intercept*. 29 Jan. 2015. https://firstlook.org/theintercept/2015/01/29/one-year-major-report-nsa-still-collecting-bulk-domestic-data-still-clueless-much-good-surveillance/

[2] Edward Snowden comes forward as source of NSA leaks," by Barton Gellman, Aaron Blake, Greg Miller. *The Washington Post*. 9 Jun. 2013. http://www.washingtonpost.com/politics/intelligence-leaders-push-back-on-leakers-media/2013/06/09/fff80160-d122-11e2-a73e-826d299ff459_story.html

[3] "Congress passes NSA surveillance reform in vindication for Snowden," by Sabrina Siddiqui. *The Guardian*. 3 Jun. 2015. http://www.theguardian.com/us-news/2015/jun/02/congress-surveillance-reform-edward-snowden

[4] "Don't Worry, the Government Still Has Plenty of Surveillance Power if Section 215 Sunsets," Electronic Frontier Foundation, 15 May. 2015. https://www.eff.org/deeplinks/2015/05/dont-worry-government-still-has-plenty-surveillance-power-if-section-215-sunsets

[5] "Surveillance reform wars continue," by Patrick Eddington. *The Hill*. 15 Jun. 2015. http://thehill.com/blogs/congress-blog/homeland-security/244891-surveillance-reform-wars-continue

[6] "N.S.A. Collection of Bulk Call Data Is Ruled Illegal," by Charlie Savage. *New York Times*. May 7, 2015. http://www.nytimes.com/2015/05/08/us/nsa-phone-records-collection-ruled-illegal-by-appeals-court.html?_r=0

Supreme Court review.[7] My reporting on whether agencies have collected and stored information on journalists like myself could influence the outcome of these cases.

2) Documents leaked by Edward Snowden on January 19 reveal that the NSA's British partner agency, GCHQ, has collected the communications of journalists and editors at the *BBC*, *Reuters*, the *Guardian*, the *New York Times*, *Le Monde*, *NBC* and the *Washington Post*.[8] As we know from previously declassified and leaked documents, the US and Britain cooperate closely on signals intelligence.[9] Thus, there is at present an urgent public interest and "exceptional media interest" in knowing how the American government interprets its own authority to collect and retain information on journalists, and whether or not the US government has engaged in comparable surveillance (intentional or incidental) of American journalists like myself.[10]

3) A majority of journalists believe the government is collecting their data. A Pew Research – Columbia University study released February 5, 2015, found that 64% of American investigative journalists believe the U.S. government has "probably collected data about their phone calls, emails or online communications," and 80% believe that being a journalist "increases the likelihood that their data will be collected."[11] These

---

[7] "If the Supreme Court Tackles the NSA in 2015, it'll be one of these give cases," by Cyrus Farivar. *Ars Technica.* Jan 1, 2015. http://arstechnica.com/tech-policy/2015/01/if-the-supreme-court-tackles-the-nsa-in-2015-itll-be-one-of-these-five-cases/

[8] "GCHQ captured emails of journalists from top international media," by James Ball, *The Guardian.* 19 Jan. 2015. http://www.theguardian.com/uk-news/2015/jan/19/gchq-intercepted-emails-journalists-ny-times-bbc-guardian-le-monde-reuters-nbc-washington-post

[9] "British Spy Chiefs Secretly Begged to Play in NSA's Data Pools," by Ryan Gallagher. *The Intercept.* Apr. 30, 2015 https://firstlook.org/theintercept/2014/04/30/gchq-prism-nsa-fisa-unsupervised-access-snowden/

[10] "Edward Snowden files reveal GCHQ scooped up journalist e-mails," by Karla Adam. *Washington Post.* Jan 19, 2015. http://www.washingtonpost.com/world/europe/edward-snowden-files-reveal-gchq-scooped-up-journalist-e-mails/2015/01/19/40b64644-028a-45a6-b025-fd0d4cf83a2c_story.html "How have journalists responded to revelations of mass surveillance?" by Stuart Dredge. *The Guardian.* http://www.theguardian.com/technology/2015/feb/06/investigative-journalists-mass-surveillance-nsa-edward-snowden

[11] "Investigative Journalists and Digital Security." Jesse Holcomb, Amy Mitchell, Kristen Purcell. *Pew Research Center.* Feb. 5, 2015. http://www.journalism.org/2015/02/05/investigative-journalists-and-digital-security/; "Investigative journalists are pretty sure the U.S. government is watching them," by Andrea Peterson. *Washington Post*. http://www.washingtonpost.com/blogs/the-switch/wp/2015/02/06/investigative-journalists-are-pretty-sure-the-u-s-government-is-watching-them/

beliefs have changed the way that many journalists report stories, share or store sensitive documents, and communicate with other journalists, editors, and producers.[12] As a joint ACLU, Human Rights Watch report confirms,[13] this climate of fear and speculation is dangerous and could compromise the ability of journalists to fulfill their role in shedding light on government activity. There is therefore an urgent public interest in knowing whether the government is collecting information on journalists, and if so, what sort of information. The documents sought in this request will allow me to report, in concrete detail, on that story.

4) I have an imminent deadline for a *Washington Post* story on the subject of government data collection—in particular, the surveillance of investigative journalists, especially those reporting on privacy and security. I also have a book chapter on the subject due in 60 days. The time for this story is now—when public, congressional and judicial attention is focused on questions of government surveillance, journalistic freedom and privacy rights. The information sought in this request will be of much lesser value to my reporting and to the public if received after Congress moves on from debating surveillance reforms and/or after the exceptional media interest in this story has passed.

**Please send the results as they are available and, where possible, in an electronic format.**

**Use of information:** This request is being made in support of a newsgathering operation. If you deny all or any part of this request, please cite each specific exemption that forms the basis of your refusal to release the information and notify me of appeal procedures available under the law.

---

[12] "Nearly half (49%) say they have at least somewhat changed the way they store or share sensitive documents, and 29% say the same of the way they communicate with other reporters, editors or producers." Ibid.

[13] "With Liberty to Monitor All: How Large-Scale US Surveillance is Harming Journalism, Law and American Democracy.," by Human Rights Watch and ACLU. July 2014. https://www.aclu.org/sites/default/files/assets/dem14-withlibertytomonitorall-07282014.pdf

Sincerely,

*[signature]*

**Barton Gellman**
*The Washington Post*, National Correspondent
910 West End Ave. Apt 12A
New York, NY 10025
Phone: 347-422-7801
E-Mail: gellmanb@gmail.com

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 6, 2015.*

*[signature]*

July 6, 2015

Office of Public Affairs
U.S. Department of Homeland Security
Washington, D.C. 20528

Dear FOIA officer -

Under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a, please furnish me with copies of all records that mention my name, Barton Gellman (aka Bart Gellman), held by the Department of Homeland Security, Office of Public Affairs

**Responsive records may pertain to:**

- information relating to my travels, domestic and international, since 1980, including ticket and flight information, Passenger Name Records, records pertaining to inspections or secondary inspections (whether or not secondary inspections were actually conducted), IE Entry/Exit Records, I94 records, HR records, ITRAC, other data collected and/or stored by ATS;

- data in any form, electronic or otherwise, shared with the US government by airlines, travel agencies, financial, lodging or other non-government travel service providers (including IP addresses, user agents and browser data logged by service provider web sites);

- records indicating that any of the aforementioned information has been disseminated or shared in any form with other federal, state, local, tribal or foreign personnel, organizations or agencies; and if so, what was shared and when;

- my interaction with Edward Snowden since 2013 and my role in reporting on electronic surveillance and other intelligence operations, policies, targets, sources and methods during that period;

- any mention of me, whether as a potential subject, target, witness or in any other role, in connection with a leak investigation or any other investigation, including but not limited to criminal, counterintelligence and counterterrorism investigations;

- my work as a journalist and author covering the federal government, military, diplomatic, intelligence, national security and legal affairs from 1983 to present;

- informational and comments by and about me in connection with security screenings of other people (for positions of trust or access to secure facilities or classified information) and in connection with the security screenings required to clear me for access to restricted areas, including but not limited to the Pentagon

and other U.S. and allied defense facilities and proximity to senior civilian and uniformed officials.

- my contacts with foreign nationals, governmental and nongovernmental, while in the United States and overseas;

**Date Range**: 1980 – present

To help identify information about me in your record systems, I am providing the following required information:

*Full Name:* Barton David Gellman
*Current Address:* 910 West End Ave. Apt 12A, New York, NY 10025
*Birthdate:* November 3, 1960
*Place of Birth:* Philadelphia, PA
*Citizenship Status:* USA

Please also see attached a copy of DOJ-361, provided for identification purposes.

**Please provide the records as they become available, and, where possible, via electronic means such as fax or email attachments.**

**Fees:** As a "representative of the news media," I am only required to pay for the direct cost of duplication after the first 100 pages. (6 CFR. 5.11 (d)(3)) Through this request, I am gathering information that will reveal how the government interprets its authority to collect and retain information on journalists like myself. This is of current interest to the public because of the ongoing debate—in the courts, the media, and Congress—over government surveillance, and because of widespread concern that journalists and their sources are being subject to surveillance. This information is being sought on behalf of *The Washington Post* and myself for dissemination to the general public.

Please waive any applicable fees. Release of the information is in the public interest because it will contribute significantly to public understanding of government operations and activities. The information sought will inform my ongoing reporting, as well as an upcoming book, on privacy, security and surveillance in the digital age. The release of this information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government," (6 CFR. 5.11 (k)(1)(i)), namely, the government's surveillance of and retention of information about journalists, like myself, who report on national security issues.

If my fee waiver is denied, I am willing to pay up to $50 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.

**Expedited Processing:** I am requesting expedited processing for this request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 CFR. 5.5(d)(1)(ii). My job as a national correspondent for *The Washington Post* qualifies me as "a person primarily engaged in disseminating information." Moreover, the information requested pertains to an "actual or alleged federal government activity" of urgent public concern. I have a "compelling need" for the records sought for the following reasons:

1) The public, as well as Congress and the courts, continue to debate whether and how to narrow the scope of the government's authority to collect data on its citizens.[1] The documents sought will help inform that debate, by allowing me to report on how the government interprets its authority to collect and retain information on journalists like myself. A few weeks ago, Congress voted in favor of the USA Freedom Act—in some part, thanks to my own reporting[2] on the intelligence documents leaked to me by Edward Snowden—which curtails the NSA's ability to collect Americans' phone records in bulk.[3] Many privacy advocates agree, however, that bulk collection under section 215 of the Patriot Act is by no means the most invasive or concerning surveillance power revealed over the past year.[4] In the coming months, Congress will consider whether to further rein in the government's surveillance activities—including the warrantless search of American communications via Sec. 702 of the FISA Amendments Act.[5] In the courts, the Second Circuit Court of Appeals ruled that bulk metadata collection is not legal under Patriot Act sec 215.[6] Other appeals courts have also heard arguments about the legality of surveillance programs. A split among the opinions of these courts could prompt a

---

[1] "A Year After Reform Push, NSA Still Collects Bulk Domestic Data, Still Lacks Way to Assess Value," by Dan Froomkin. *The Intercept*. 29 Jan. 2015. https://firstlook.org/theintercept/2015/01/29/one-year-major-report-nsa-still-collecting-bulk-domestic-data-still-clueless-much-good-surveillance/

[2] Edward Snowden comes forward as source of NSA leaks," by Barton Gellman, Aaron Blake, Greg Miller. *The Washington Post*. 9 Jun. 2013. http://www.washingtonpost.com/politics/intelligence-leaders-push-back-on-leakers-media/2013/06/09/fff80160-d122-11e2-a73e-826d299ff459_story.html

[3] "Congress passes NSA surveillance reform in vindication for Snowden," by Sabrina Siddiqui. *The Guardian*. 3 Jun. 2015. http://www.theguardian.com/us-news/2015/jun/02/congress-surveillance-reform-edward-snowden

[4] "Don't Worry, the Government Still Has Plenty of Surveillance Power if Section 215 Sunsets," Electronic Frontier Foundation, 15 May. 2015. https://www.eff.org/deeplinks/2015/05/dont-worry-government-still-has-plenty-surveillance-power-if-section-215-sunsets

[5] "Surveillance reform wars continue," by Patrick Eddington. *The Hill*. 15 Jun. 2015. http://thehill.com/blogs/congress-blog/homeland-security/244891-surveillance-reform-wars-continue

[6] "N.S.A. Collection of Bulk Call Data Is Ruled Illegal," by Charlie Savage. *New York Times*. May 7, 2015. http://www.nytimes.com/2015/05/08/us/nsa-phone-records-collection-ruled-illegal-by-appeals-court.html?_r=0

Supreme Court review.[7] My reporting on whether agencies have collected and stored information on journalists like myself could influence the outcome of these cases.

2) Documents leaked by Edward Snowden on January 19 reveal that the NSA's British partner agency, GCHQ, has collected the communications of journalists and editors at the *BBC*, *Reuters*, the *Guardian*, the *New York Times*, *Le Monde*, *NBC* and the *Washington Post*.[8] As we know from previously declassified and leaked documents, the US and Britain cooperate closely on signals intelligence.[9] Thus, there is at present an urgent public interest and "exceptional media interest" in knowing how the American government interprets its own authority to collect and retain information on journalists, and whether or not the US government has engaged in comparable surveillance (intentional or incidental) of American journalists like myself.[10]

3) A majority of journalists believe the government is collecting their data. A Pew Research – Columbia University study released February 5, 2015, found that 64% of American investigative journalists believe the U.S. government has "probably collected data about their phone calls, emails or online communications," and 80% believe that being a journalist "increases the likelihood that their data will be collected."[11] These

---

[7] "If the Supreme Court Tackles the NSA in 2015, it'll be one of these give cases," by Cyrus Farivar. *Ars Technica.* Jan 1, 2015. http://arstechnica.com/tech-policy/2015/01/if-the-supreme-court-tackles-the-nsa-in-2015-itll-be-one-of-these-five-cases/

[8] "GCHQ captured emails of journalists from top international media," by James Ball, *The Guardian.* 19 Jan. 2015. http://www.theguardian.com/uk-news/2015/jan/19/gchq-intercepted-emails-journalists-ny-times-bbc-guardian-le-monde-reuters-nbc-washington-post

[9] "British Spy Chiefs Secretly Begged to Play in NSA's Data Pools," by Ryan Gallagher. *The Intercept.* Apr. 30, 2015 https://firstlook.org/theintercept/2014/04/30/gchq-prism-nsa-fisa-unsupervised-access-snowden/

[10] "Edward Snowden files reveal GCHQ scooped up journalist e-mails," by Karla Adam. *Washington Post.* Jan 19, 2015. http://www.washingtonpost.com/world/europe/edward-snowden-files-reveal-gchq-scooped-up-journalist-e-mails/2015/01/19/40b64644-028a-45a6-b025-fd0d4cf83a2c_story.html "How have journalists responded to revelations of mass surveillance?" by Stuart Dredge. *The Guardian.* http://www.theguardian.com/technology/2015/feb/06/investigative-journalists-mass-surveillance-nsa-edward-snowden

[11] "Investigative Journalists and Digital Security." Jesse Holcomb, Amy Mitchell, Kristen Purcell. *Pew Research Center.* Feb. 5, 2015. http://www.journalism.org/2015/02/05/investigative-journalists-and-digital-security/; "Investigative journalists are pretty sure the U.S. government is watching them," by Andrea Peterson. *Washington Post.* http://www.washingtonpost.com/blogs/the-switch/wp/2015/02/06/investigative-journalists-are-pretty-sure-the-u-s-government-is-watching-them/

beliefs have changed the way that many journalists report stories, share or store sensitive documents, and communicate with other journalists, editors, and producers.[12] As a joint ACLU, Human Rights Watch report confirms,[13] this climate of fear and speculation is dangerous and could compromise the ability of journalists to fulfill their role in shedding light on government activity. There is therefore an urgent public interest in knowing whether the government is collecting information on journalists, and if so, what sort of information. The documents sought in this request will allow me to report, in concrete detail, on that story.

4) I have an imminent deadline for a *Washington Post* story on the subject of government data collection—in particular, the surveillance of investigative journalists, especially those reporting on privacy and security. I also have a book chapter on the subject due in 60 days. The time for this story is now—when public, congressional and judicial attention is focused on questions of government surveillance, journalistic freedom and privacy rights. The information sought in this request will be of much lesser value to my reporting and to the public if received after Congress moves on from debating surveillance reforms and/or after the exceptional media interest in this story has passed.

**Please send the results as they are available and, where possible, in an electronic format.**

**Use of information:** This request is being made in support of a newsgathering operation. If you deny all or any part of this request, please cite each specific exemption that forms the basis of your refusal to release the information and notify me of appeal procedures available under the law.

---

[12] "Nearly half (49%) say they have at least somewhat changed the way they store or share sensitive documents, and 29% say the same of the way they communicate with other reporters, editors or producers." Ibid.

[13] "With Liberty to Monitor All: How Large-Scale US Surveillance is Harming Journalism, Law and American Democracy.," by Human Rights Watch and ACLU. July 2014. https://www.aclu.org/sites/default/files/assets/dem14-withlibertytomonitorall-07282014.pdf

Sincerely,

*(signature)*

**Barton Gellman**
*The Washington Post*, National Correspondent
910 West End Ave. Apt 12A
New York, NY 10025
Phone: 347-422-7801
E-Mail: gellmanb@gmail.com

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 6, 2015.*

*(signature)*

July 6, 2015

Office of the General Counsel
U.S. Department of Homeland Security
Washington, D.C. 20528

Dear FOIA Officer -

Under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a, please furnish me with copies of all records that mention my name, Barton Gellman (aka Bart Gellman), held by the Department of Homeland Security, Office of the General Counsel.

**Responsive records may pertain to:**

- information relating to my travels, domestic and international, since 1980, including ticket and flight information, Passenger Name Records, records pertaining to inspections or secondary inspections (whether or not secondary inspections were actually conducted), IE Entry/Exit Records, I94 records, HR records, ITRAC, other data collected and/or stored by ATS;

- data in any form, electronic or otherwise, shared with the US government by airlines, travel agencies, financial, lodging or other non-government travel service providers (including IP addresses, user agents and browser data logged by service provider web sites);

- records indicating that any of the aforementioned information has been disseminated or shared in any form with other federal, state, local, tribal or foreign personnel, organizations or agencies; and if so, what was shared and when;

- my interaction with Edward Snowden since 2013 and my role in reporting on electronic surveillance and other intelligence operations, policies, targets, sources and methods during that period;

- any mention of me, whether as a potential subject, target, witness or in any other role, in connection with a leak investigation or any other investigation, including but not limited to criminal, counterintelligence and counterterrorism investigations;

- my work as a journalist and author covering the federal government, military, diplomatic, intelligence, national security and legal affairs from 1983 to present;

- informational and comments by and about me in connection with security screenings of other people (for positions of trust or access to secure facilities or classified information) and in connection with the security screenings required to clear me for access to restricted areas, including but not limited to the Pentagon

and other U.S. and allied defense facilities and proximity to senior civilian and uniformed officials.

- my contacts with foreign nationals, governmental and nongovernmental, while in the United States and overseas;

**Date Range**: 1980 – present

To help identify information about me in your record systems, I am providing the following required information:

*Full Name:* Barton David Gellman
*Current Address:* 910 West End Ave. Apt 12A, New York, NY 10025
*Birthdate:* November 3, 1960
*Place of Birth:* Philadelphia, PA
*Citizenship Status:* USA

Please also see attached a copy of DOJ-361, provided for identification purposes.

**Please provide the records as they become available, and, where possible, via electronic means such as fax or email attachments.**

**Fees:** As a "representative of the news media," I am only required to pay for the direct cost of duplication after the first 100 pages. (6 CFR. 5.11 (d)(3)) Through this request, I am gathering information that will reveal how the government interprets its authority to collect and retain information on journalists like myself. This is of current interest to the public because of the ongoing debate—in the courts, the media, and Congress—over government surveillance, and because of widespread concern that journalists and their sources are being subject to surveillance. This information is being sought on behalf of *The Washington Post* and myself for dissemination to the general public.

Please waive any applicable fees. Release of the information is in the public interest because it will contribute significantly to public understanding of government operations and activities. The information sought will inform my ongoing reporting, as well as an upcoming book, on privacy, security and surveillance in the digital age. The release of this information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government," (6 CFR. 5.11 (k)(1)(i)), namely, the government's surveillance of and retention of information about journalists, like myself, who report on national security issues.

If my fee waiver is denied, I am willing to pay up to $50 for the processing of this request. Please inform me if the estimated fees will exceed this limit before processing my request.

**Expedited Processing:** I am requesting expedited processing for this request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 CFR. 5.5(d)(1)(ii). My job as a national correspondent for *The Washington Post* qualifies me as "a person primarily engaged in disseminating information." Moreover, the information requested pertains to an "actual or alleged federal government activity" of urgent public concern. I have a "compelling need" for the records sought for the following reasons:

1) The public, as well as Congress and the courts, continue to debate whether and how to narrow the scope of the government's authority to collect data on its citizens.[1] The documents sought will help inform that debate, by allowing me to report on how the government interprets its authority to collect and retain information on journalists like myself. A few weeks ago, Congress voted in favor of the USA Freedom Act—in some part, thanks to my own reporting[2] on the intelligence documents leaked to me by Edward Snowden—which curtails the NSA's ability to collect Americans' phone records in bulk.[3] Many privacy advocates agree, however, that bulk collection under section 215 of the Patriot Act is by no means the most invasive or concerning surveillance power revealed over the past year.[4] In the coming months, Congress will consider whether to further rein in the government's surveillance activities—including the warrantless search of American communications via Sec. 702 of the FISA Amendments Act.[5] In the courts, the Second Circuit Court of Appeals ruled that bulk metadata collection is not legal under Patriot Act sec 215.[6] Other appeals courts have also heard arguments about the legality of surveillance programs. A split among the opinions of these courts could prompt a

---

[1] "A Year After Reform Push, NSA Still Collects Bulk Domestic Data, Still Lacks Way to Assess Value," by Dan Froomkin. *The Intercept*. 29 Jan. 2015. https://firstlook.org/theintercept/2015/01/29/one-year-major-report-nsa-still-collecting-bulk-domestic-data-still-clueless-much-good-surveillance/

[2] Edward Snowden comes forward as source of NSA leaks," by Barton Gellman, Aaron Blake, Greg Miller. *The Washington Post*. 9 Jun. 2013. http://www.washingtonpost.com/politics/intelligence-leaders-push-back-on-leakers-media/2013/06/09/fff80160-d122-11e2-a73e-826d299ff459_story.html

[3] "Congress passes NSA surveillance reform in vindication for Snowden," by Sabrina Siddiqui. *The Guardian*. 3 Jun. 2015. http://www.theguardian.com/us-news/2015/jun/02/congress-surveillance-reform-edward-snowden

[4] "Don't Worry, the Government Still Has Plenty of Surveillance Power if Section 215 Sunsets," Electronic Frontier Foundation, 15 May. 2015. https://www.eff.org/deeplinks/2015/05/dont-worry-government-still-has-plenty-surveillance-power-if-section-215-sunsets

[5] "Surveillance reform wars continue," by Patrick Eddington. *The Hill*. 15 Jun. 2015. http://thehill.com/blogs/congress-blog/homeland-security/244891-surveillance-reform-wars-continue

[6] "N.S.A. Collection of Bulk Call Data Is Ruled Illegal," by Charlie Savage. *New York Times*. May 7, 2015. http://www.nytimes.com/2015/05/08/us/nsa-phone-records-collection-ruled-illegal-by-appeals-court.html?_r=0

Supreme Court review.[7] My reporting on whether agencies have collected and stored information on journalists like myself could influence the outcome of these cases.

2) Documents leaked by Edward Snowden on January 19 reveal that the NSA's British partner agency, GCHQ, has collected the communications of journalists and editors at the *BBC*, *Reuters*, the *Guardian*, the *New York Times*, *Le Monde*, *NBC* and the *Washington Post*.[8] As we know from previously declassified and leaked documents, the US and Britain cooperate closely on signals intelligence.[9] Thus, there is at present an urgent public interest and "exceptional media interest" in knowing how the American government interprets its own authority to collect and retain information on journalists, and whether or not the US government has engaged in comparable surveillance (intentional or incidental) of American journalists like myself.[10]

3) A majority of journalists believe the government is collecting their data. A Pew Research – Columbia University study released February 5, 2015, found that 64% of American investigative journalists believe the U.S. government has "probably collected data about their phone calls, emails or online communications," and 80% believe that being a journalist "increases the likelihood that their data will be collected."[11] These

---

[7] "If the Supreme Court Tackles the NSA in 2015, it'll be one of these give cases," by Cyrus Farivar. *Ars Technica.* Jan 1, 2015. http://arstechnica.com/tech-policy/2015/01/if-the-supreme-court-tackles-the-nsa-in-2015-itll-be-one-of-these-five-cases/

[8] "GCHQ captured emails of journalists from top international media," by James Ball, *The Guardian.* 19 Jan. 2015. http://www.theguardian.com/uk-news/2015/jan/19/gchq-intercepted-emails-journalists-ny-times-bbc-guardian-le-monde-reuters-nbc-washington-post

[9] "British Spy Chiefs Secretly Begged to Play in NSA's Data Pools," by Ryan Gallagher. *The Intercept.* Apr. 30, 2015 https://firstlook.org/theintercept/2014/04/30/gchq-prism-nsa-fisa-unsupervised-access-snowden/

[10] "Edward Snowden files reveal GCHQ scooped up journalist e-mails," by Karla Adam. *Washington Post.* Jan 19, 2015. http://www.washingtonpost.com/world/europe/edward-snowden-files-reveal-gchq-scooped-up-journalist-e-mails/2015/01/19/40b64644-028a-45a6-b025-fd0d4cf83a2c_story.html "How have journalists responded to revelations of mass surveillance?" by Stuart Dredge. *The Guardian.* http://www.theguardian.com/technology/2015/feb/06/investigative-journalists-mass-surveillance-nsa-edward-snowden

[11] "Investigative Journalists and Digital Security." Jesse Holcomb, Amy Mitchell, Kristen Purcell. *Pew Research Center.* Feb. 5, 2015. http://www.journalism.org/2015/02/05/investigative-journalists-and-digital-security/; "Investigative journalists are pretty sure the U.S. government is watching them," by Andrea Peterson. *Washington Post*. http://www.washingtonpost.com/blogs/the-switch/wp/2015/02/06/investigative-journalists-are-pretty-sure-the-u-s-government-is-watching-them/

beliefs have changed the way that many journalists report stories, share or store sensitive documents, and communicate with other journalists, editors, and producers.[12] As a joint ACLU, Human Rights Watch report confirms,[13] this climate of fear and speculation is dangerous and could compromise the ability of journalists to fulfill their role in shedding light on government activity. There is therefore an urgent public interest in knowing whether the government is collecting information on journalists, and if so, what sort of information. The documents sought in this request will allow me to report, in concrete detail, on that story.

4) I have an imminent deadline for a *Washington Post* story on the subject of government data collection—in particular, the surveillance of investigative journalists, especially those reporting on privacy and security. I also have a book chapter on the subject due in 60 days. The time for this story is now—when public, congressional and judicial attention is focused on questions of government surveillance, journalistic freedom and privacy rights. The information sought in this request will be of much lesser value to my reporting and to the public if received after Congress moves on from debating surveillance reforms and/or after the exceptional media interest in this story has passed.

**Please send the results as they are available and, where possible, in an electronic format.**

**Use of information:** This request is being made in support of a newsgathering operation. If you deny all or any part of this request, please cite each specific exemption that forms the basis of your refusal to release the information and notify me of appeal procedures available under the law.

---

[12] "Nearly half (49%) say they have at least somewhat changed the way they store or share sensitive documents, and 29% say the same of the way they communicate with other reporters, editors or producers." Ibid.

[13] "With Liberty to Monitor All: How Large-Scale US Surveillance is Harming Journalism, Law and American Democracy.," by Human Rights Watch and ACLU. July 2014. https://www.aclu.org/sites/default/files/assets/dem14-withlibertytomonitorall-07282014.pdf

Sincerely,

**Barton Gellman**
*The Washington Post*, National Correspondent
910 West End Ave. Apt 12A
New York, NY 10025
Phone: 347-422-7801
E-Mail: gellmanb@gmail.com

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 6, 2015.*