UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BARTON GELLMAN**,<br><br>       Plaintiff,<br><br>       v.<br><br>**DEPARTMENT OF HOMELAND SECURITY**, *et al.*,<br><br>       Defendants. | Case No. 16-cv-635 (CRC) |

## MEMORANDUM OPINION

Journalist Barton Gellman challenges the withholding of documents responsive to his Freedom of Information Act ("FOIA") requests to numerous federal agency components for all records that mention his name.  In a prior ruling, this Court found that some of the withholdings were not supported by adequate explanations.  After producing some previously withheld records to Mr. Gellman, the agency defendants filed their second motion for summary judgment, attaching new, more detailed declarations in defense of the remaining withholdings.  Gellman opposes that motion and has filed a renewed cross-motion for partial summary judgment.  He urges the Court to order some of the withheld records released and to demand more information from the agencies about other withholdings.

After carefully reviewing the record, the Court concludes that all of the documents that remain in dispute are exempt from disclosure under FOIA.  The Court will therefore enter summary judgment for the defendants and bring this protracted case to a close.

I.   **Background**

Barton Gellman is a Pulitzer Prize-winning journalist who reports on foreign affairs, the military, and intelligence issues.  In 2013 and 2014, Mr. Gellman reported for the *Washington*

*Post* on documents that had been leaked by former National Security Agency ("NSA") contractor Edward Snowden. Gellman Decl. ¶ 6, ECF No. 41-4. Throughout 2015, Gellman submitted FOIA and Privacy Act requests to nine separate components of federal agencies (collectively, "the Government") seeking all records that mention his name. Id. ¶¶ 14-22; Compl. Exhs. A-I.[1] After some agencies failed to respond within the statutory timeframe and others informed Gellman that they were withholding all responsive records, he filed this suit in April 2016. Over the next two years, the Government adhered to the Court's order to process and produce responsive, non-exempt records on a monthly basis.

After the Government issued its final response, the parties determined that dispositive motions were necessary. The Government moved for summary judgment, supported by declarations from each agency, including two *ex parte* declarations for the Court to review *in camera*, explaining each withholding and redaction. Gellman filed a cross-motion for partial summary judgment and asked the Court to review certain documents *in camera*.

In March 2020, the Court issued a lengthy Memorandum Opinion granting in part and denying in part both sides' summary judgment motions. The Court entered summary judgment for the Government as to most of the challenged withholdings. Gellman v. DHS, No. 16-cv-35 (CRC), 2020 WL 1323896, at *1 (D.D.C. Mar. 20, 2020). It also ordered the Government to produce "all emails to or from Gellman himself that were forwarded to someone else within the

---

[1] The recipient agencies are: the Department of Homeland Security—including its components the Office of Legislative Affairs, the Office of Intelligence and Analysis, and the Transportation Security Administration; the Department of Justice ("DOJ")—including its components the Federal Bureau of Investigation, the Criminal Division, the Office of Information Policy ("OIP"), and the National Security Division; and the Office of the Director of National Intelligence ("ODNI"). Some agencies sought a consultation from the NSA, which requested certain withholdings on its behalf.

agency" and to remove any "unexplained" redactions based on asserted non-responsiveness "in records that are narrower than the email level." Id. at *2 n.4, *5 n.7.  More importantly for present purposes, the Court identified "several issues where an agency needs to provide more detailed descriptions of the withheld or redacted documents" and denied summary judgment to both sides on those issues, inviting the Government to file another motion for summary judgment supported by additional information.  Id. at *1.

The Government renewed its summary judgment motion as to all outstanding issues in June 2020, attaching declarations by four agency officials.  Gellman opposed the Government's motion and filed a cross-motion for partial summary judgment, asking the Court to order the Government to produce certain documents withheld based on the deliberative process privilege or purported non-responsiveness.  Both motions are now fully briefed.

In their motion papers, the parties identify five remaining issues: (1) whether ODNI has adequately justified its withholding of two sentences in an email regarding the filling of an agency position; (2) whether OIP properly withheld drafts of statements to the news media; (3) whether OIP demonstrated that one email discussing a press report was exempt from disclosure; (4) whether OIP complied with FOIA and this Court's prior ruling in withholding certain news clips as non-responsive; and (5) whether OIP properly withheld briefing materials prepared for then-Attorney General Eric Holder and other senior DOJ officials in anticipation of meetings including an interview with Mr. Gellman.

**II. Legal Standard**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976).  At the same time, FOIA contains a set of exemptions to an agency's general obligation to provide

government records to the public, see 5 U.S.C. § 552(b), which are meant "to balance the public's interest in governmental transparency against the legitimate governmental and private interests that could be harmed by release of certain types of information." United Techs. Corp. v. Dep't of Def., 601 F.3d 557, 559 (D.C. Cir. 2010) (cleaned up).  Because FOIA "mandates a strong presumption in favor of disclosure," its "statutory exemptions, which are exclusive, are to be narrowly construed." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (internal quotation marks omitted).

Summary judgment is the typical and appropriate vehicle to resolve FOIA disputes. See Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  When seeking summary judgment, the Government bears the burden to establish that its claimed FOIA exemptions apply to each record for which they are invoked. ACLU v. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011).  It may satisfy this burden through agency declarations that "describe[] the justifications for withholding the information with specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption." Id. "Such declarations are entitled to a presumption of good faith, and the court can award the agency summary judgment based solely on the information so provided." Judicial Watch, Inc. v. CIA, 310 F. Supp. 3d 34, 41 (D.D.C. 2018).  But agency declarations will not support summary judgment if the plaintiff puts forth contrary evidence or demonstrates the agency's bad faith. ACLU, 628 F.3d at 619.

### III. Analysis

As already noted, the present summary judgment motions present five issues.  The Court will address each issue in turn.

A. <u>ODNI adequately justified its withholding of two sentences in a January 2014 email.</u>

The parties dispute only one withholding by ODNI: a two-sentence redaction in an email, ODNI Document 42, based on the deliberative process privilege. The Court concludes that ODNI has adequately justified this redaction.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "This exemption includes all privileges that would apply during discovery in ordinary litigation, including the deliberative process privilege." <u>Gellman</u>, 2020 WL 1323896, at *11.

The deliberative process privilege serves "to encourage frank discussion of policy matters, prevent premature disclosure of proposed policies, and avoid public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action." <u>Petrucelli v. Dep't of Justice</u>, 51 F. Supp. 3d 142, 161 (D.D.C. 2014). To qualify for the privilege, a document must be both predecisional and deliberative. <u>Tax Analysts v. IRS</u>, 117 F.3d 607, 616 (D.C. Cir. 1997). "To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter." <u>Nat'l Sec. Archive v. CIA</u>, 752 F.3d 460, 463 (D.C. Cir. 2014). "The term 'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." <u>Id.</u>

"[E]ven if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980). However, when parties dispute whether an otherwise predecisional and

deliberative document has lost its privileged status through adoption or public use, the FOIA requester—not the agency—bears the burden of persuasion on that issue. See McKinley v. Bd. of Governors of Fed. Reserve Sys., 849 F. Supp. 2d 47, 63 n.14 (D.D.C. 2012) (plaintiff bears the "burden to establish that predecisional records have been adopted as policy"); see also Elec. Priv. Info. Ctr. v. Dep't of Justice, 584 F. Supp. 2d 65, 78 (D.D.C. 2008) (plaintiff must provide more than "speculation" that a document was adopted). Accordingly, an agency relying on the deliberative process privilege generally need not "affirmatively assert that the withheld material was not formally or informally adopted." McKinley, 849 F. Supp. 2d at 63 n.14 (internal quotation marks omitted).

ODNI Document 42 is an intra-agency email chain dated January 3, 2014. Koch Decl. ¶ 52, ECF No. 57-3. According to a declaration signed by Gregory M. Koch, the Acting Director of ODNI's Information Management Division, "ODNI redacted two sentences in Document 42" that contained "a suggestion regarding how the filling of an agency personnel position could address intelligence issues related to the content of Plaintiff's article." Id. Mr. Koch explains that "[t]he suggestion was made by a subordinate staffer to other personnel, including senior staff (the Deputy DNI for Intelligence Integration and the Principal Deputy DNI)." Id. ¶ 53. Sometime after the email was sent, the Government decided whether to follow the recommendation made in the redacted sentences. Id. Koch further states that "[r]eleasing the withheld information would cause harm to the Government's deliberative decisionmaking process by chilling candid conversations concerning personnel needs" and that "there is no segregable, factual information in the withheld paragraph." Id.

Applying the presumption that Koch's declaration was prepared and submitted in good faith, the Court finds that ODNI has sufficiently demonstrated that the redacted sentences in

Document 42 are protected by the deliberative process privilege. The Koch Declaration shows that those two sentences are deliberative (because they made a recommendation as part of internal agency deliberations about filling a personnel need) and predecisional (because they were written by a junior staffer before the agency made any decision on the matter).

Gellman argues that ODNI's explanation of the redaction is inadequate because "ODNI has not specified whether the suggestion in this record was adopted by the agency" after it was written. Pl. Mem. in Support of Renewed Cross-Mot. for Partial Summ. J. 8 ("Pl. Mem."), ECF No. 58-1. The Court disagrees. To reiterate, the plaintiff bears the burden to show evidence, beyond mere "speculation," that a document has been adopted and thus lost its predecisional status. Elec. Priv. Info. Ctr., 584 F. Supp. 2d at 78. Here, Gellman has provided no non-speculative reason to believe the redacted language in ODNI Document 42 was later adopted as agency policy.

Seeking to avoid this conclusion, Gellman points to a line of authority holding that when an agency seeks to assert the deliberative process privilege on the basis that the withheld document is a "draft," the agency has an affirmative duty to "indicate whether the draft was adopted formally or informally, as the agency position on an issue, or used by the agency in its dealings with the public." Heffernan v. Azar, 317 F. Supp. 3d 94, 125-26 (D.D.C. 2018) (cleaned up); see also Pl. Reply 3, ECF No. 62 (collecting cases). But these cases are not inconsistent with the general rule that plaintiffs bear the burden to prove that a document has lost its predecisional status through adoption. Rather, they reflect a judicial recognition that the label "draft," if accepted uncritically, poses a special danger of becoming an improper get-out-of-FOIA-free card for the Government. Certainly, the process of writing a document on behalf of an agency is often a deliberative one. But not all "draft" documents are "deliberative in nature"

7

when they are written.  Arthur Andersen & Co. v. IRS, 679 F.2d 254, 257-58 (D.C. Cir. 1982). Nor does calling a document a "draft" clarify whether it has lost its predecisional status through subsequent adoption.  Id. at 258.  Indeed, there must be countless adopted "drafts" in the Government's files; it is typical for a writing process to end with the decision to adopt an existing draft as the final product, perhaps with some cosmetic finishing touches.  Therefore, it makes sense that when the Government asserts that a withheld record is a "draft," it should proactively answer the obvious follow-up question of whether the draft has been adopted.  But it does not follow that *all* assertions of the deliberative process privilege, including those that do not relate to "draft" documents, must be accompanied by an affirmative statement of non-adoption.  See Heffernan, 317 F. Supp. 3d at 122 (acknowledging that generally, "the agency does not carry the burden of proving that each withheld document was not adopted formally or informally" (internal quotation marks omitted)).

  Finally, Gellman suggests that ODNI violated the Court's prior order by failing to provide "more detail" about Document 42 than it provided in the first round of summary judgment briefing.  Pl. Reply 2 (quoting Order 3, ECF No. 51).  In fact, ODNI complied with the Court's instruction.  The Koch Declaration adds the new information that the redacted "suggestion was made by a subordinate staffer to other personnel, including senior staff (the Deputy DNI for Intelligence Integration and the Principal Deputy DNI)."  Koch Decl. ¶ 53.  This information helps the Court determine that the withheld language is predecisional and deliberative in nature.  See Schlefer v. United States, 702 F.2d 233, 238 (D.C. Cir. 1983) ("Intra-agency memoranda from 'subordinate' to 'superior' on an agency ladder are likely to be more 'deliberative' in character than documents emanating from superior to subordinate.").

The Government is therefore entitled to summary judgment as to its partial withholding of ODNI Document 42.

B.  OIP properly withheld drafts of statements to the news media.

Next, Gellman challenges OIP's withholding of drafts of statements to the press.  The Court finds that the Government has adequately demonstrated that these draft statements are protected by the deliberative process privilege.

In its prior opinion in this case, the Court held that "the Government must turn over any predecisional statements to the extent they match precisely the agency's actual statements to the press."  Gellman, 2020 WL 1323896, at *12 n.14.  That is so because draft press statements would lose their predecisional status if "adopted, formally or informally, as the agency position on an issue."  Coastal States Gas Corp., 617 F.2d at 866.

As discussed above, plaintiffs generally bear the burden to show that a document has lost its privileged status through adoption.  But in the narrower context where an agency asserts the deliberative process privilege over "draft" documents, courts have held, for good reason, that the agency must "indicate whether the draft was adopted formally or informally, as the agency position on an issue."  Heffernan, 317 F. Supp. 3d at 125 (cleaned up).

Here, OIP has addressed the question of whether its draft press statements were later adopted, albeit in a somewhat equivocal manner.  Vanessa Brinkmann, Senior Counsel at OIP, states in her fourth and latest declaration that "OIP has no indication that the draft statements that continue to be withheld pursuant to the deliberative process privilege . . . were incorporated into final statements, and the documents at issue here do not indicate that any of the drafts were identical to a final version, beyond what has already been released to Plaintiff."  Fourth

9

Brinkmann Decl. ¶ 5, ECF No. 63-1.  However, Ms. Brinkmann does not claim to know with complete certainty whether each draft statement was ultimately adopted.  She explains:

> Beyond looking at the context found within the four corners of the records located in OIP's search, it is simply not possible to track down the final statements provided to the press in every instance. OIP will sometimes check with relevant Department officials when the four corners of a record would seem to indicate that a statement is finalized or approved (such as the presence of "this statement is cleared" in an email). However, having no such leads in the records at issue in the present case and considering the age of the records, it was not practical or feasible for OIP to do that here. Where statements are made to the press orally, there is no repository of these "final statements" that OIP can refer back to. In limited circumstances, OIP may be able to speak with Department personnel or otherwise track down official public statements to determine if final statements were ultimately made to the press and whether they match an earlier written draft of the statements; however, due to the age of the records at issue in this case, and given personnel changes in the Department since these records were created, this is simply not feasible nor an efficient use of OIP's limited resources and OIP must look to the four corners of the records themselves.

Id. ¶ 6.  In other words, OIP relied on the "four corners" of the responsive records at issue—an admittedly imperfect indicator—to determine that the withheld draft press statements do not appear to have been incorporated into final statements.

Gellman argues that Brinkmann's declaration shows a failure to comply with the Court's prior instruction to "turn over any predecisional statements to the extent they match precisely the agency's actual statements to the press."  Gellman, 2020 WL 1323896, at *12 n.14.  As Gellman puts it, "OIP may not refuse to take steps to comply with the Court's Order because the agency unilaterally asserts that it does not think compliance is an 'efficient' use of its time."  Pl. Surreply 2.  Gellman has a point: the agency does not have absolute, unreviewable discretion over how much effort it devotes to due diligence on the propriety of its own withholdings.  On the other hand, nothing in the case law, including this Court's prior opinion, indicates that OIP must spare no expense in researching whether any of its draft press statements were adopted as final.  The question is one of reason.  As the D.C. Circuit has explained, an agency's search for

10

records responsive to a FOIA request "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." DiBacco v. U.S. Army, 795 F.3d 178, 194 (D.C. Cir. 2015).  It makes sense to apply similar logic in judging the adequacy of an agency's corollary search for evidence that might shed light on the exempt or non-exempt status of responsive records.

After careful consideration, the Court is persuaded that OIP acted reasonably in concluding that the withheld draft press statements remain privileged.  To begin, the agency's overall approach to determining whether a draft statement has been adopted as final is a rational one.  As Ms. Brinkmann explains, there are legitimate reasons why OIP does not consider it feasible to conduct an open-ended investigation of what ultimately became of every draft statement—specifically, "[t]he age of the records at issue in this case," "personnel changes in the Department [of Justice] since these records were created," and the lack of a "repository of [all] 'final statements' that OIP can refer back to."  Fourth Brinkmann Decl. ¶ 6.  Therefore, it was reasonable for the agency to look to "the four corners" of the withheld records and decide that, if those records contained no "leads" suggesting adoption, no further inquiry was needed.

Gellman contends that, contrary to OIP's assertion, the records themselves did contain "leads" that should have prompted a more searching investigation.  He cites several documents in the record as examples of such leads.  Pl. Surreply 2-3.  Having examined the record, the Court does not find that it contains any leads that rise to the level where OIP could not reasonably fail to follow up on them.  In fairness, one of the examples cited by Gellman does present a close call.  In an email thread from August 2013, agency officials workshop a statement for the NSA to send to the *Washington Post* in response to an inquiry about an upcoming story. Townsend Decl. Exh. 5, ECF No. 41-3.  Eventually, public affairs official Andrew Ames writes:

"I will provide this for their use in responding." Id.  The following paragraph, presumably consisting of the draft statement, is redacted in full.  Understandably, Gellman believes that the language preceding the redacted paragraph suggests that the draft statement was intended for the NSA to use as a final statement.  See Pl. Surreply 3.  However, it does not appear that Mr. Ames was the final decisionmaker on what the NSA would tell the *Post*, and the record does not indicate whether the NSA ultimately adopted the redacted draft statement or otherwise used the statement in its response.  The Court thus cannot say it was unreasonable for OIP to conclude that Mr. Ames's email was a mere predecisional recommendation without obvious markers of adoption.

The Government has carried its burden to justify its withholding of draft press statements.

C.  OIP may withhold a February 2014 email in full under Exemption 5.

OIP fully withheld a February 2014 email by public affairs official Wyn Hornbuckle, again claiming the deliberative process privilege.  Second Marshall Decl. Exh. 2, ECF No. 58-3.  This withholding was proper.

According to the Fourth Brinkmann Declaration, the February 2014 email "contains both a reaction to a news article and an articulated proposed future decision."  Fourth Brinkmann Decl. ¶ 7. "More specifically," Brinkmann explains, the email's author "asks questions about a particular aspect of the news article in the context of making suggestions and soliciting input on how to respond to that part of the article."  Id.  She further attests that "attempting to segregate any of the information that is a reaction would necessarily reveal information that continues to be withheld pursuant to Exemption 5 as an articulated proposed future decision."  Id.

Gellman argues that OIP must segregate and release the portion of the email that merely reacts to news coverage, since the Court previously held that "reactions to news articles *without*

12

an articulated future decision . . . are not properly withheld under the deliberative process privilege." Pl. Mem. 5-6 (quoting Gellman, 2020 WL 1323896, at *13). This argument fails because Brinkmann's declaration, which is entitled to a presumption of good faith, provides a reasonably clear explanation of why the reactive and deliberative portions of the email are "inextricably intertwined" and cannot be segregated. Fourth Brinkmann Decl. ¶ 7; see also De Sousa v. CIA, 239 F. Supp. 3d 179, 203 (D.D.C. 2017) (agencies "met their segregability burdens by submitting Vaughn indexes, in combination with the attestations of their respective declarants that documents were reviewed 'on a line-by-line basis' and no further segregation would be possible"). OIP thus properly justified its withholding of the February 2014 email.

    D.  <u>OIP properly withheld some news clips as unresponsive to Gellman's request.</u>

The parties dispute whether OIP has violated FOIA and the Court's prior order by withholding some news clips within otherwise responsive emails as unresponsive. The Court finds nothing improper about these withholdings.

The Court has previously addressed the Government's withholding of non-responsive news clips. As the Court explained, "DOJ officials receive daily compilations of abridged media reports on relevant topics." Gellman, 2020 WL 1323896, at *5. The Government decided "to define each article as a separate record" within those compilations, and the Court found that "the Government met its burden to show that this definition of a record was reasonable." Id. Therefore, the Court ruled that the Government need not produce individual news clips that are unrelated to Gellman, even if those clips are contained in compilations that also include responsive items. Id. Separately, the Court found that the Government must remove "any other unexplained non-responsive redactions in records that are narrower than the email level." Id. at *5 n.7.

13

Relying on that latter quotation from the Court's prior opinion, Gellman now argues that OIP is improperly withholding non-responsive news clips within "single emails" that also contain responsive ones. Pl. Reply 9. But these redactions are not "unexplained." Gellman, 2020 WL 1323896, at *5 n.7. The Government previously explained that it treats individual news clips within compilation emails as separate records because each one "is distinct from the next, each constituting a discrete package of information." Second Brinkmann Decl. ¶ 20, ECF No. 48-4. And the Court previously accepted this explanation, thus allowing the Government to withhold non-responsive news clips regardless of what else is contained within the same email or thread. Gellman, 2020 WL 1323896, at *5. The Court adheres to its previous conclusion on this issue.[2]

### E. OIP's withholdings of briefing materials for DOJ leadership are adequately supported.

Finally, OIP asserted the deliberative process privilege to withhold briefing materials written to help then-Attorney General Holder and other senior DOJ officials prepare for conversations with journalists. Gellman raises two objections to these withholdings.

First, Gellman challenges the withholding of "purely factual material" in the draft and final versions of the briefing documents. Pl. Mem. 8. He correctly observes that "[a]s a general matter, purely factual information is not deliberative, and therefore cannot be withheld under the deliberative process privilege." Id. 9. "In some circumstances, however, the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be

---

[2] The Court cannot fathom why Mr. Gellman seeks to put the Government to the task of processing and producing summaries of news stories by other reporters on topics other than those on which he reported in response to his already expansive request for any and all records mentioning his name.

14

deemed exempted" under Exemption 5.  Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977); see also Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 372 (D.C. Cir. 2005) (factual material may be withheld if "inextricably intertwined with the deliberative material" (internal quotation marks omitted)).

In her declaration, Ms. Brinkmann asserts that the facts contained in the briefing materials "cannot be segregated and released."  Fourth Brinkmann Decl. ¶ 8.  She explains that "[t]he briefing materials are meant to provide Department officials with relevant background information ahead of specified events or interviews, or more generally to prepare them for potential questions, so the official may use that selected background knowledge in the official's internal deliberation in deciding what official statements to provide to the press or others."  Id.  The briefing materials do not represent a final decision on what information will be conveyed to the press, but merely a set of recommendations and suggestions.  Id.  Therefore, Brinkmann states, "[t]he very decision to include or exclude certain factual information can itself shed light on the Department's deliberative process, exposing the broader set of information chosen to prepare Department officials for meetings and interviews with the press."  Id.

This explanation suffices to justify OIP's withholding of the factual material in the briefing documents.  Importantly, Brinkmann does not merely recite the legal truism that a "decision to include or exclude certain factual information can itself shed light on the Department's deliberative process."  Id.  Rather, she attests that the specific documents at issue are "meant to provide Department officials with relevant background information . . . so the official may use that selected background knowledge in the official's internal deliberation" about what to tell the press.  Id.  In other words, the very purpose of the briefing materials is to suggest and recommend facts for DOJ leadership to highlight publicly.  Those facts are therefore

15

"inextricably intertwined" with the deliberative aspects of the briefing materials. Judicial Watch, Inc., 432 F.3d at 372.

Resisting this conclusion, Gellman contends that, "[t]aken to its logical extreme," OIP's position "would justify the shielding of all factual material that is the subject of deliberation by agency officials." Pl. Mem. 11 (quoting Judicial Watch, Inc. v. Dep't of State, No. CV 15-0688 (RC), 2017 WL 456417, at *10 (D.D.C. Feb. 2, 2017)). Not so. As Gellman observes, the D.C. Circuit has made clear that a document written solely to make agency officials aware of certain facts is not protected by the deliberative process privilege. See Playboy Enters., Inc. v. Dep't of Justice, 677 F.2d 931, 935 (D.C. Cir. 1982) ("Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material."). However, the briefing materials at issue here do not merely provide factual background to inform DOJ leadership's understanding of subsequent deliberative suggestions and recommendations. Rather, on Brinkmann's telling, the facts contained in the briefing materials *are themselves* deliberative; by including certain facts, the authors of the briefing materials suggested or recommended that senior DOJ officials consider mentioning those facts to the press. See Fourth Brinkmann Decl. ¶ 8.

Second, Gellman argues that the versions of briefing materials designated "final" should be released in full because the record shows that these documents "were relied on in the Justice Department's dealings with the public." Pl. Mem. 12; see also Pl. Surreply 5 (citing Defs. Responses to Pl. Statement of Material Facts ¶¶ 129-30, ECF No. 60-1). In Gellman's view, it does not matter whether the Attorney General or other DOJ officials "expressly adopted the document's reasoning as [DOJ's] own or published the document." Pl. Surreply 5 (quoting

16

Fourth Brinkmann Decl. ¶ 9). The simple fact that the documents have been "*used by the agency in its dealings with the public,*" Gellman argues, means those documents have lost their predecisional status. Id. (quoting Arthur Andersen & Co., 679 F.2d at 258).

Gellman misconstrues the case law on waiver of the deliberative process privilege. A document that makes recommendations to a senior agency official in anticipation of an engagement with journalists does not lose its privileged status simply because the official uses the document as intended and follows some of its recommendations. See Leopold v. ODNI, 442 F. Supp. 3d 266, 278-79, 282 (D.D.C. 2020) (approving withholding of, *inter alia*, an email containing deliberations that "contributed to the joint public statement which was eventually released" and a draft version of an external communication that reflected "opinions and revisions, some of which were accepted and some of which were denied"). Subjecting all such deliberative documents to disclosure would interfere with the "ability of government employees to be candid when deliberating how to respond to the press." Gellman, 2020 WL 1323896, at *12. Therefore, courts in this district generally allow agencies to withhold their internal deliberations about press statements, unless the agency subsequently made a public statement that "replicated" the text of the deliberative document. Protect Democracy Project, Inc. v. U.S. Dep't of Def., 320 F. Supp. 3d 162, 177 (D.D.C. 2018) (Cooper, J.); see also Am. Ctr. for Law & Justice v. Dep't of Justice, 325 F. Supp. 3d 162, 174 (D.D.C. 2018) (finding talking points privileged but alluding to the possibility that "verbatim recitation" of talking points to the press would waive the privilege).[3]

---

[3] This reasoning does not vitiate the D.C. Circuit's admonition that the deliberative process privilege could be waived if a document was "used by the agency in its dealings with the public." Arthur Andersen & Co., 679 F.2d at 258. Gellman suggests a broad, hyper-literal interpretation of that language, rendering non-privileged any deliberative document that is

Here, the record does not indicate that any official waived privilege over the briefing materials by reciting them to the press. To the contrary, Brinkmann expressly asserts that "OIP has been unable to identify any public statements matching to the briefing materials, or any indication that the Department (or Mr. Holder) expressly adopted the document's reasoning as its own or published the document." Fourth Brinkmann Decl. ¶ 9. Gellman suggests that the Attorney General may have adopted parts of the briefing materials during an interview with Gellman himself. See Pl. Mem. 13 (stating that Holder answered an interview question with "the type of response that would be prepared in advance" and discussed a terrorism case that might have been covered in the briefing materials). But this suggestion is speculative; Gellman's evidence falls far short of proving that Holder based his comments on the withheld briefing materials or replicated any language from those materials. Unlike in Electronic Frontier Foundation v. Department of Justice, on which Gellman relies, there is no "particularly high" likelihood here that Holder waived privilege over the withheld documents. 826 F. Supp. 2d 157, 171 (D.D.C. 2011).

In light of Brinkmann's latest declaration and the presumption of good faith owed to it, the Court concludes that OIP properly withheld the briefing materials.

---

somehow "used" in connection with a media interview or other public event. But the case law supports a more limited reading of the phrase. Courts have applied the waiver-by-public-use principle in cases where an agency publicly invoked or referred to the deliberative document itself. See Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 359 (2d Cir. 2005) ("The [Office of Legal Counsel] Memorandum was 'used by the agency in its dealings with the public' as the sole legal authority for the Department's claim that its new policy had a basis in the law" (quoting Coastal States Gas Corp., 617 F.2d at 866)); Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (explaining that the rationale for requiring disclosure of documents "used by the agency in its dealings with the public" is that those documents have been "expos[ed] . . . to third parties").

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Partial Summary Judgment. A separate Order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>February 22, 2021</u>